Case 36.—ACTION BY L. R. FIGG AND OTHERS AGAINST MARY DULANEY AND OTHERS TO ENFORCE LIENS FOR STREET IMPROVEMENT.—June 15.

### Dulaney, &c. v. Figg, &c.

| | |
|---|---|
| 123 | 291 |
| 128 | 124 |
| 123 | 291 |
| 138 | 498 |

Appeal from Jefferson Circuit Court, (Chancery Branch, 1st Division.)

Shackelford Miller, Judge.

Judgment for Plaintiffs. Defendants appeal. Affirmed.

1. Street Improvements—Lien—Dedication—There can be no lien against abutting property for street improvements unless such street has been dedicated to the public.

2. Rights of Married Women—Estoppel—Permissive Use of Property for a Street—A married woman who knowingly permits a portion of her land in a city to be used and occupied by the

Dulaney, &c. v. Figg, &c.

city as a street, for a period of twenty-five years, without objection, is estopped to deny its dedication as a public way for public purposes, and may be divested of so much of her right, title and interest in the street as is necessary for the use of the public. And her children cannot occupy a better position than she does.

LANE & HARRISON, attys. for appellants.

### PROPOSITIONS INVOLVED.

1. A married woman can not make a parole dedication of her lands or of any interest therein to the public. (Robinson v. Robinson, 11 Bush, 176 Parsons v. Spencer, 83 Ky., 311; Green v. Page, 80 Ky., 368; Parsons on Contracts, Vol. 1, page 391-473; Van Zant v.Weir, 109 Ala., 104; Lewis on Eminent Domain, Vol. 2, page 735; Elliott on Streets and Roads, sec. 138; Indianapolis v. Patterson, 112 Ind., 344; Wood v. Pittsburg, 19 Ohio St., 526; Johnson v. St. Louis, 125 Mo., 655; Beeler v. Wyburn, 57 Ind., 144; Lowell v. Daniels, 2 Gray, 161; Schenley v. Commonwealth, 36 Pa. St., 62; State v. O'Laughlin, 19 Kan., 505.)

2. Neither a life-tenant, nor tenant by curtesy can by any act or deed of theirs dedicate to the public any greater interest or estate in the tract of land than he himself possesses, and which determines at his death. (Rives v. Jones, 3 Jones Equity (N. C.), 126; Detroit v. Detroit, 23 Mich., 173; Elliott on Roads and Streets, sec. 145; Baxter v. Taylor, 4 B. & Ald., 72; Bermondsey v. Brown, 35 Beavan, 226.)

3. Any attempt upon the part of the life-tenant to dedicate to the public for the purposes of a street the lands over which the same may be extended would be operative only during the period of such an estate, and it is well settled that a dedication to be effective must be made by the true owner and of all interests therein. (Dillon on Municipal Corporations, 1st Ed., sec. 498; Elliott. on Streets and Roads, sec. 144; Hoole v. Attorney General, 22 Ala., 190; Gentlemen v. Soule, 32 Ill., 271; Evansville v. Burnshock, 66 Ill. App., 381; Ledley v. Hopkins, 84 Ill., 528; Bingham v. Mann., 59 Ill., 492; Warren v. Brown, 31 Neb., page 8; Cyr. v. Madore, 73 Maine, 53.)

4. And it is also well settled that neither the life-tenant nor any one entering under him can interpose adverse possession or the statute of limitations against the remaindermen. (Lewis in his work on Eminent Domain, Vol. 2, page 322, sec. 300.)

5. In order that a lien may exist under the provisions of Section 2833 of the Ky. Stats, it is essential that the way improved should

Dulaney, &c. v. Figg, &c.

be a public way—a lien can not exist upon private property for the improvement of a street over lands which are not public. (Bodley v. Finley, 23 Ky. Law Rep., 851; Bodley v. Finley, 24 Ky. Law Rep., 2478; Preston v. Roberts, 11 Bush, 576; Elliott on Streets and Roads, sec. 508; 115 Cal., 441; 62 Maryland, 371; 94 Cal., 444.)

6. Mere silence will not estop a married woman—nothing short of intentional fraud constitutes an available estoppel against her in favor of any one invoking the same. (Biglow on Estoppels, pages 502-10; Louisville v. Stephens, 96 Ky., 404; Hannon v. Madden, 10 Bush, 664.)

7. Where a cause of action accrues to a married woman, no statute of limitation runs against her so long as her coverture exists, except the statute of thirty years limitation, which is in no wise affected by the Act of March 15, 1894. (Higgins v. Stokes, 24 Ky. Law Rep., 2427; Sturgill v. Chesapeake, 25 Ky. Law Rep., 912; Onions v. Covington, 21 Ky. Law Rep., 2429; Louisville v. Thompson, 20 Ky. Law Rep., 1110.)

8. To create a right by prescription—the use and the enjoyment of what is claimed must be adverse—it must be hostile to the right and possession of the true owner and must be exclusive, continuous and uninterrupted and maintained for the required period to bar an action for the recovery of land by the owner against the one claiming the easement. Adverse possession for a less time confers no right. (Lewis on Eminent Domain, Vol. 2, page 322; Elliott on Roads & Streets, 175; Lanier v. Booth, 50 Miss., 415; Stewart v. Frank, 94 N. C., 489; Coburn v. San Mateo, 75 Fed. Rep., 532; Town v. McClintock, 150 Ill., 133; Engle v. Hunt, 50 Neb., 358; Homan v. Harvey, 40 Iowa, 634.)

9. If at the time the ordinance is passed providing for the improvement of a space claimed to be public, in consequence of adverse use, it is made to appear that the use had not been continued for the requisite time to vest title in the public, and the space was private property, when the ordinance providing for the improvement was passed, the abutting property owner cannot be held liable, although he stood by and took no steps to prevent the improvement. In such a case there is a want of power in the local government, and it is settled that where there is no power in the local government to make a contract or to pass an ordinance for such an improvement at the expense of the abutting property owner, that mere silence in standing by and permitting the improvement to be made does not estop the property-owner from making defense to and defeating such a claim. After acquired title by the public to the strip will be of no avail. Elliott on Streets and Roads, Section 508; Spalding v. Weston, 115 Cal., 441; Mayor v.

Hook, 62 Md., 371; Cook v. Madden, 94 Cal., 44; Joyce v. Shadburn, 11 Ky. Law Rep., 892; Bodley v. Finley, 23 Ky. Law Rep., 852; Bodley v. Finley, 24 Ky. Law Rep., 2478; Preston v. Roberts, 12 Bush, 576; Nevin v. Roach, 86 Ky., 498; Bellview v. Peacock, 89 Ky., 499; Bellview v. Hahn, 82 Ky., page 3; Worthington v. Covington, 82 Ky., 265; Murphy v. Louisville, 9 Bush, 189; Columbia v. Poplar, 149 Mo., 367; Henderson v. Lambert, 14 Bush, 30; Louisville v. Tyler, 23 Ky. Law Rep., 828; Button v. Kremer, 24 Ky. Law Rep., 1196.

10. Maps made out by the local authorities representing a strip of land as being a part of a public way, or as having been dedicated to public is no evidence whatever of a dedication by the owner. Sanford v. Covington, 12 Ky. Law Rep., 452; Harleson v. Elsey, 17 Ky. Law Rep., 924; Exterkamp v. Covington, 20 Ky. Law Rep., 968; Clark v. Madden, 94 Cal., 415; Lewis on Eminent Domain, 114; Clark v. Elizabeth, 38 N. J. L., 130; Bond v. McKeesport, 166 Pa. St., 57; New York v. Hafflin, 90 Hunn, 260; State v. Hudson, 38 N. J. L., 12.

DuRELLE & McHENRY for appellees. FIGG and others.

1. The question in this case is not necessarily whether there was an absolute dedication of Garland Avenue prior to the passage of the ordinance for the improvement of that street. The question is not solely of a dedication in pais.

(a) If there was a dedication in pais at the date of the ordinances, September 26, 1899, the Dulaney property is subject to the assessment which was made. If there was an actual dedication by adverse, continuous use by the city and the public for so long a time, that the statutes of limitations would bar a suit by the Dulaneys to recover the land, and close up the street, the defense cannot stand.

(b) If Mrs. Dulaney, the title holder, acquiesced in the open, notorious and active use of Garland Avenue as a street, and stood by without interference or objection while it was improved, under the ordinances, she, and those who claim under her, are estopped to object to proceedings to compel payment for the street's construction.

(c) Since the Weissenger Act of March 15, 1894, the greater diligence is required of a married woman in the assertion of her rights than was required before she acquired the right to assert then by suit, in her own name.

(d) But, if the dedication in pais of Garland Avenue was incomplete at the date the ordinances were passed, but became complete before the suit was brought, it would seem that the action of the city, through its ordinances in improving the street, is vali-

dated, just as it would have been by the execution of a deed of dedication of the street to public use, while it was in process of building, or just after it was finished.

A. E. RICHARDS, City Atty. for appellee, City of Louisville.

1. Where the property owner stands by and allows the contractor to complete his work without notice or protest, he is estopped from denying his liability on an apportionment warrant. (Barber Asphalt Paving Co., v. Garr, 24, R., 2235.)

2. Nor does the fact that such owner was a married woman make any difference. (Caperton v. Humpick, 95 Ky., 105; Trustees of Hazelgreen v. McNab, 23 Ky., L. R. 812; Herman on estoppel, 2 Vol., p. 1141; Bull v. Seveer, 88 Ky., 524.)

3. A common law dedication operates as an estoppel in pais. (Dillon on Mun. Corp., 2 vol. sec. 628; State v. Wilson, 43 Me., 23; Trustees City of Cincinnati v. Lessees of Edward White, 6 Peters, (U. S.) 439; Jarvis v. Deane, 3 Binghan, 447; Jos. Barclay, etc. v. Howell's Lessee, 6 Peters, (U. S:), 513; Riley v. Buchanan, 25 Ky., L. R., 863; Buchanon v. Curtis, 25 Wis., 99.)

OPINION BY COMMISSIONER JOHN D. CARROLL—Affirming.

The only question in this case is whether or not the land owned by appellants, and situated on the south side of Garland avenue, between Eighteenth and Twenty-Sixth streets, in the city of Louisville, can be subjected to the payment of the costs of improving the avenue between the streets named. The real estate sought to be subjected is a part of a tract of land conveyed to the mother of appellants in 1847 who married W. H. Dulaney about 1854, and died in 1901. It appears from the record that in 1868 the territory including the land in question was annexed to the city of Louisville, and about 1871 the street now called Garland avenue was opened. The center line of this street was the division line between the lands of Marguaret Dulaney on the south and Beynroth and others on the north, and when the street was opened W. H. Dulaney donated 40 feet of it, and Beynroth and others 40 feet, making the street 80 feet in width. After this street was opened the

Dulaneys built a fence on their line, and the land-
owners on the north side built a fence on their line,
and from that time continuously this 80 feet of ground
has been used and occupied by the public generally
without let or hinderance on the part of the Dulaneys
or the persons who gave the other half of it, and has
been recognized as a public thoroughfare by the city,
the general public, and all persons concerned. That
the use of this street was with the knowledge of Mar-
guaret Dulaney there can be no reasonable doubt. It
was not improved by the city until after it had been
thus opened and occupied by the public for more than
25 years. It is also in evidence that the 40 feet of
ground granted by the Dulaneys for the purpose of
this way from Eigtheenth to Twenty-Sixth streets has
not been assessed for taxation for many years, as the
city authorities regarded it as a street. W. H. Du-
laney, the husband of Marguaret Dulaney, acknowl-
edged that this 40 feet had been dedicated for pur-
poses of a street, and so stated on more than one
occasion, and in maps made of the city by its engi-
neers it is shown as a street. It does not appear, how-
ever, that Mrs. Dulaney or her husband ever con-
veyed this 40 feet to the city, or that she expressly
granted or dedicated it for public use, and it is now
insisted that a married woman cannot make a parol
dedication of her lands, or any interest therein, to
the public, and that the only way in which Mrs.
Dulaney could divest herself of her interest and title
in the land was by a deed executed in the manner pro-
vided by the statute. It is further argued that mere
silence or standing by will not estop a married wo-
man, and that until land has been donated to pub-
lic use by a person able to make the dedication, or
has been conveyed in the manner provided by statute
it cannot be charged with street improvements. It
may be conceded that unless this street was dedicated
to the public use no lien could be asserted against the

abutting property for the costs of improvements.
Bodley v. Finley's Ex'r, 111 Ky., 618; 64 S. W., 439,
23 Ky. Law Rep. 851. So that the principal question
in this case is, was there a dedication of this street to
the city by Mrs. Dulaney?

In Louisville Railroad Company v. Stephens, 96 Ky.
401, 16 Ky. L. R., 552; 29 S. W. 14, 49 Am. St. Rep.
303, where the conveyance of the wife was so defective
as not to pass title, this court said: "We are aware
of no case in which it has been held that a married
woman is estopped from asserting title to her land
except on the ground of fraud. She can be divested
of her interest only in the mode pointed out by the
statute." The doctrine of this case and others along
the same line is rested upon the ground that as the
statute (Ky. St. 1903) provides in sections 505, 506,
2129, that the only way by which a married woman
may sell and convey her land is by writing acknowl-
edged by her  and her husband, these statutory pro-
visions preclude the wife from divesting herself of
title to real estate in any other manner. There is a
great deal of force in this position, and it has been
frequently held by this court that, when the wife
undertakes to divest herself of title by contract or
conveyance, the contract or conveyance must be exe-
cuted in the manner provided by the statute. Ken-
nedy v. Ten Broeck, 11 Bush, 241  But there are
other methods by which married women can divest
themselves of title as effectually as by contract or
conveyance. To illustrate: In Heck v. Fisher, 78
Ky. 643, it is said that, "while the rights of mar-
ried women are jealously watched over. by the courts,
they will not permit coverture to be used as a cloak
for fraud, even when the feme covert is quiescent, and
not an active participant in its perpetration." In
Connolly v. Branstler, 3 Bush, 702, 96 Am. Dec. 278,
the court held that a married woman was estopped
from asserting dower in real estate of her husband

by her public announcement that she would not claim
dower against any person who should become the pur-
chaser. In Stith v. Carter, 60 S. W. 725, 22 Ky. Law
Rep. 1488, a married woman who stood by and saw
the parties take possession of and improve property
was held estopped to dispossess them; the court say-
ing: "A married woman may be estopped by her
conduct, as may be a single woman, or a man. That
which in conscience should close the mouth of one
in law will equally estop the other." In Bull v. Se-
vier, 88 Ky., 515. 11 Ky. L. R., 32; 11 S. W. 506, the court
said: The doctrine of equitable estoppel is applicable
to married women, as well as those not under any dis-
ability. It is far reaching, and is complete when a
party is seeking an inequitable advantage which in
view of his own conduct he ought not to obtain. It is
sufficient if it will work a fraud to the other party.
Actual fraud is not necessary." In Pomeroy's
Equity Jurisprudence, vol. 2, §814. in discussing the
doctrine of equitable estoppel as applied to married
women, the author states the rule thus: "Upon the
question of how far the doctrine of equitable estop-
pel by conduct applies to married women, there is
some conflict among the decisions. The tendency of
modern authority, however, is strongly towards the
enforcement of estoppel against married women as
against persons sui juris, with little or no limitation
on account of their disability. This is plainly so in
States where the legislation has freed their property
from all interest or control of their husbands, and
has clothed them with partial or complete capacity
to deal with it as though they were single. Even
independently of this legislation, there is a decided
preponderance of authority sustaining the estoppel
against her either when she is attempting to enforce
an alleged right or to maintain a defense. There are,
however, decisions which hold in effect that since a
married woman cannot be directly bound by her con-

tracts or conveyances, even when accompanied with fraud, so she cannot be indirectly bound through the means of an estoppel, and the operation of the estoppel against her must be confined to cases where she is attempting affirmatively to enforce a right inconsistent with her previous conduct upon which the other party has relied.  These decisions seem to be in opposition to the general current of authority.''

In this State, in 1894 and prior to the time these improvements were made, the Legislature enacted a law removing, with few exceptions, all disability of married women, giving them the right to contract and be contracted with, sue and be sued, and divesting the husband of all control over the property of the wife.  In Elliott on Roads and Streets, p. 102, it is said:  ''The weight of authority sustains the doctrine that a married woman may be estopped in pais, although it is perhaps true that stronger circumstances are required to be shown than in the case of one fully competent to contract.  If it be true that a feme covert may be estopped by matters in pais, then it follows that a dedication may be presumed, for it rests upon the same principle.''  In Riley v. Buchanan, 116 Ky., 625; 76 S. W. 527, 25 Ky. Law Rep. 863, 63 L. R. A. 642, this court said:  ''If the real owner suffers the public generally to so use his land as a passway, under a notorious claim of right for a great length of time, whereby others may have been induced to buy property in that vicinity, relying upon the apparent right of the public to use this passway, and by which the purchase price of their lands may have been affected, it is unfair that the owner should be permitted to gainsay the truth of it.  The law operates upon his conscience, and makes effectual that which he has suffered for so long to appear to be so, by raising the conclusive presumption that he has actually done what he had allowed the public to believe he had done—dedicated the passway to the

use of the public." In Trustees of Hazelgreen v. Mc-Nabb, 64 S. W. 431, 23 Ky. Law Rep. 811, in discussing the sufficiency of the dedication and acceptance of a street in the town, the court said: "The evidence shows that the street in question has been regularly laid out for more than 20 years, and dedicated to the public use, and has been continuously so used by the municipality for that length of time. This was sufficient to have constituted a public highway to every intent and purpose under the jurisdiction of the municipality." City of Louisville v. Snow's Adm'r, 54 S. W. 860, 21 Ky. Law Rep. 1268. In Dillon on Municipal Corporations, §631, the learned author says "that it is not essential to a dedication that the legal title should pass from the owner, nor is a deed or writing necessary to constitute a valid dedication. It may be by parol. No specific length of time is necessary to constitute a valid dedication. All that is required is the assent of the owner of the soil to the public use, and the actual enjoyment by the public of the use for such a length of time that the public accommodation and private rights will be materially affected by a denial or interruption of the enjoyment." In Caperton v. Humpick, 95 Ky. 105, 15 Ky. L. R. 430; 23 S. W. 875, the owners of abutting property refused to pay for improvements made on Breckenridge street that had been used by the public for some 18 years, and in an action by the contractor to enforce his lien the court said: "If Breckenridge street was not at the time a public street, then the contractor who built the bridge, as well as the appellee, who made the improvements were simply trespassers, and appellants might have by legal proceedings stopped construction of both; and it seems to us good faith required them to do so, if they did not intend to abide by and avail themselves of the benefit thereof, and thus impliedly dedicate the street, if not directly." Numerous other authorities might be cited, sustaining

the text-writers and decision quoted, but we do not deem it necessary to further extend this opinion in that direction.

Mrs. Dulaney having seen this street occupied by the public for more than 25 years, during a large portion of which time the land occupied as a street was exempt from taxation because of that fact, we conclude that, if living, she would be estopped to deny her liability for improvements made by the city on this street that increase the value of her property, because to do so would permit her to reap the benefits of the improvements without contributing anything thereto, and would be a fraud upon the rights of the persons who made them upon the faith of her dedication of the street and its use by the public during this long period of time. A married woman may be estopped under circumstances such as are shown in this record from denying the dedication to public purposes of a public way, and may be divested by her conduct of so much of the right, title, and interest in the street as is necessary for the use of the public.

As the children of Mrs. Dulaney cannot occupy a better position than she does, the judgment of the lower court is affirmed.