## Venters, et al. v. Potter.

(Decided May 30, 1919.)

## Appeal from Letcher Circuit Court.

1. Husband and Wife—Estoppel.—A married woman cannot estop herself by her acts and declarations from asserting dower and other claims to land, except where to permit her to assert her claims will operate as a fraud.

2. Husband and Wife—Estoppel.—A husband conveyed a tract of land owned jointly by himself and wife, but the wife's signature to the deed was forged. Possession of the property was surrendered to the grantee. The husband and wife moved and remained away for two or three years. She then returned and took up her residence near the land, but took no steps to recover the property. Some time later, the grantee conveyed to defendant, who relied on the record and paid for the land without any knowledge or notice that the deed was a forgery as to the wife. After the death of the grantee, the wife brought suit to cancel the deed as to her and to recover the land: Held, that her negligence in not ascertaining that the deed was forged and her delay in not taking steps to recover the property did not amount to fraud, so as to estop her from asserting title to the property.

3. Cancellation of Instruments—Deeds—Proof Under Prayer for Possession of Land.—In a suit to partition her father's estate, plaintiff was allotted a certain lot, while her husband purchased a lot allotted to her sister. The commissioner executed a deed, conveying the two lots to plaintiff and her husband jointly. Subsequently, the property was conveyed to another by deed executed by the husband and purporting to have been executed by plaintiff, but her signature thereto was forged. In an action to cancel the deed and recover the lot allotted to her in the division of her father's estate, plaintiff, whose title was denied, offered the deed as evidence of title: Held, that having accepted and held under the deed, without any effort to have it corrected, and having offered the deed in proof of her title, she was bound by its provisions and could not recover any greater interest in the property than that conveyed by the deed.

J. B. ADAMSON, ALLIE W. YOUNG, W. H. MAY and EDWARD C. O'REAR for appellants.

F. W. STOWERS for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Upon the death of Allen Hall, an action was brought in the Letcher county court by his children and heirs to

partition among them the real property left by the decedent. Lot No. 9, containing 49 acres, was allotted to Malinda Johnson. Lot No. 10, containing 47 acres, was allotted to Louisa Potter. The two lots adjoin. Before the deeds of partition were made, James Potter, the husband of Louisa Potter, purchased lot No. 9. On April 3, 1900, the commissioner executed a deed by which he conveyed the two lots to James and Louisa Potter jointly.

On November 8, 1902, James and Louisa Potter conveyed to the Northern Coal & Coke Company the minerals underlying the two lots, with the exception of a small boundary of about ten acres upon which the dwelling house was located. The Consolidation Coal Company subsequently became the owner of the estate thus granted to the Northern Coal & Coke Company.

On April 27, 1908, a deed executed by James Potter, and purporting to have been executed by Louisa Potter, was made to John Venters. This deed conveyed the surface of the 96 acre tract, embracing lots 9 and 10 in the division of the estate of Allen Hall, together with the minerals excepted in the deed to the Northern Coal & Coke Company. This deed was put to record and Venters moved into the dwelling house and lived there until his death. Some time prior to his death, the Consolidation Coal Company, by mesne conveyances, became the owner of an undivided three-sixths interest in the small boundary of minerals, and the owner of an undivided three-sixths interest in the surface of the entire 96 acre tract.

In March, 1915, Louisa Potter brought this suit to cancel the deed to Venters on the ground that her signature thereto was a forgery, and to recover the surface of lot No. 10 and the small boundary of minerals not included in the deed to the Northern Coal & Coke Company. On final hearing, she was granted the relief prayed for and the defendants appeal.

It is not seriously contended that the evidence of forgery was not sufficient to sustain the chancellor's finding, but it is insisted that the plea of estoppel interposed by the Consolidation Coal Company should have been sustained. The facts pleaded and relied on as an estoppel are as follows: Upon the execution of the deed in question, possession of lot No. 10, containing the dwelling house, was delivered to Venters. Shortly thereafter plaintiff and her husband moved to Greenup county,

where they remained for two or three years. Plaintiff then returned to Letcher county and took up her residence in sight of the land. At that time a son of John Venters was in possession. From that time on she asserted no claim of ownership, paid no taxes on the property and never brought suit to recover the property until after the death of John Venters. In the meantime the property was conveyed to the Consolidation Coal Company, which purchased without any knowledge or notice of the forgery and paid a valuable consideration for the land. It is argued that although Louisa Potter had no actual knowledge of the forged deed, the fact that Venters had taken possession of her land and was occupying it and claiming it as his own was sufficient to put her on inquiry as to how he held the land, and had this inquiry been pursued she would have ascertained that the deed was a forgery. That being true, it is insisted that she was charged with constructive knowledge of the forged deed, and having, with this knowledge, suffered and permitted Venters to occupy the land as his own and to sell it to others who had the right to rely on the record, and who purchased and paid for the land without any knowledge of the forgery, she is now estopped to claim the land as her own. In view of the fact that a married woman may dispose of her real estate only in the manner provided by the statute, some of the courts hold that she cannot divest herself of such property in any other mode than that pointed out by the statute. Morrison v. Wilson, 13 Cal. 494, 73 Am. Dec. 593, 10 R. C. L., sec. 63, p. 745. But the trend of modern authority seems to be in favor of denying the right, even with respect to land, to invoke and use the disabilities of coverture as a cloak for fraud, 10 R. C. L., sec. 63, p. 745, and this is the rule adopted by this court. Mays v. Pelly, 125 S. W. 713; Dulaney v. Figg, 123 Ky. 291, 94 S. W. 658; Newman v. Moore, 94 Ky. 147, 21 S. W. 759, 42 A. S. R., 343. In the case of Mays v. Pelly we said: "But in no case have we held that a married woman can divest herself of title by a contract or conveyance not executed in the manner pointed out in the statute. The estoppel of a married woman is rested altogether upon the doctrine that she will not be allowed to use her coverture to perpetrate a fraud. If the element of fraud is wanting the doctrine of estoppel will not be applied;" and in the more recent case of Syck v. Hellier, 140 Ky. 388, 131 S. W. 30, the court used the following

language: "But a married woman cannot estop herself by her acts and declarations from asserting dower and other claims to land except in those cases where to permit her to do so would operate as a fraud." Indeed, it is a rule of almost universal application that, with respect to real property, a married woman will not be estopped by her silence and failure to assert her rights. 10 R. C. L., sec. 655, p. 747; Williamson v. Jones, 43 W. Va. 562, 27 S. E. 411, 64 A. S. R. 891, 38 L. R. A. 694. Here it does not appear that Louisa Potter knew of the forged deed, or that she took any part in the sale made by Venters. The most that can be said is that she was merely negligent in not ascertaining that the deed was forged and in not promptly asserting a claim to the property. In our opinion, these facts do not amount to fraud within the meaning of the rule above set out, and we therefore conclude that the chancellor did not err in holding that the plea of estoppel was not available.

The judgment is attacked on the ground that Louisa Potter was permitted to recover the entire surface of lot No. 10 as well as the minerals under the ten acre tract theretofore reserved, whereas the commissioner's deed conveyed to her only a half interest in that property. It is suggested that this question cannot now be raised because it was not raised below. As a matter of fact, however, Louisa Potter alleged title to lot No. 10. Her title was denied. To prove her title she introduced the commissioner's deed, which conveyed to her only a half interest in lot No. 10. Whether this deed could have been corrected as against subsequent purchasers it is unnecessary to decide. As a matter of fact, it has never been corrected. Though her husband was the purchaser of lot No. 9, and she herself was allotted lot No. 10 in the division of her father's estate, there was nothing to prevent them from having the two lots conveyed to them jointly, if they so desired. Having accepted and held under the deed, without any effort to have it corrected, and having offered the deed in proof of her title, she is bound by its provisions and cannot recover any greater interest in the property than that conveyed by the deed. Hence, she should have been adjudged only a half interest in the surface and reserved minerals of lot No. 10.

Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.