[No. 19637.  *En Banc.*  August 31, 1926.]

## THE CITY OF YAKIMA, *Respondent,* v. H. J. SNIVELY *et al., Appellants,* ANNA McNEILL ZEDIKER, *Intervener.*[1]

[1] DEDICATION (8)—ACTS CONSTITUTING—RECITALS IN CONVEYANCE. The clause in a deed of a strip of land that it shall be forever kept open as a roadway, carries the implication that the conveyance was a private way of necessity (MAIN and ASKREN, JJ., dissenting).

[2] MUNICIPAL CORPORATIONS (199)—PUBLIC IMPROVEMENTS—ASSESSMENT—POWER TO LEVY. A city's title to a street must be presumed to be derived from the deeds executed after the commencement of the proceedings for its improvement, where there is nothing else in the records to show any title.

[3] SAME (199). Where the city had no title to a street at the time it started its proceedings to improve it, no lien can be levied against the abutting property.

[4] SAME (258) — ASSESSMENTS — FAILURE TO MAKE OBJECTIONS. Where a city has no title to a street to be improved, the fact that abutting property owners did not appear and object to the assessment does not preclude them from subsequently attacking the assessment.

[5] SAME (199)—PUBLIC IMPROVEMENTS—ASSESSMENTS — POWER TO LEVY. The defect in proceedings to improve a street from the lack of any title in the city is cured where, pending the proceedings, the city acquired title to the street.

[6] SAME (283)—IMPROVEMENTS—ASSESSMENTS—INTEREST. A city has no right to attach interest and penalties to that part of the assessment which had never been legally assessed; and to do so, must levy a reassessment.

Appeal from a judgment of the superior court for Yakima county, Nichoson, J., entered October 11, 1924, in favor of the defendants, in an action to foreclose a special assessment. Reversed.

*Snively & Bounds,* for appellants.

*Dolph Barnett,* for respondent city of Yakima.

*Harcourt M. Taylor,* for respondent Zediker.

[1]Reported in 248 Pac. 788.

HOLCOMB, J.—This action was brought to foreclose a lien for special assessments, and from a decree in favor of respondent city and respondent intervener, this appeal is taken.

On February 20, 1911, a resolution of intention to improve certain streets in Yakima, was adopted by the city council, the improvement district being designated as No. 224. On March 8, 1911, an ordinance was passed, in conformity with the resolution of intention, providing for the improvement to consist of paving certain streets and avenues, including, among others, one designated therein as Linden Lane, and another then called Miles avenue, which cross each other at right angles, Miles avenue running north and south on the eastern border of a tract of land belonging to appellants, and Linden Lane, as it was called, running east and west from the west side of Miles avenue, on the north border of appellants' land, to the west limits of the city, then called North Yakima. The land of appellants, situated within the angle formed by these two streets, is 486.6 feet long on the northern boundary along the so-called Linden Lane, and three hundred feet wide north and south along Miles avenue, and six hundred sixty feet long on the southern boundary, the western boundary being on an angle from the southwest corner of the tract to the northwest corner. No street abutting the west end of the tract was improved by the city.

Although appellants contend that their land was not to be considered as unplatted land, we conclude that it is unplatted land under the ruling in *Sivyer & Sons v. Spokane,* 77 Wash. 282, 137 Pac. 808; as the land here, although readily susceptible of being divided into blocks of ordinary size, has never been so subdivided, and is unplatted. Hence, we also conclude, contrary to a contention of the appellants, that under the act of 1909, ch.

26, the levy could include the land of appellants to a depth of one hundred twenty feet.

Notice of hearing on the assessment roll for the improvement ordained by the city council was given December 28 and 29, 1911, and the roll was confirmed and the ordinance passed January 15, 1912.

The improvement was initiated under ch. 26, Laws of 1909, p. 38. On June 7, 1911, ch. 98, Laws of 1911, p. 441 [Rem. Code, § 9352 *et seq.*], took effect, providing a complete new act on the subject of local improvements and assessments therefor. By the provisions of the saving clause of the latter act, all remedial provisions contained in it superseded the existing law, and made it mandatory on municipal authorities and property owners to be governed by the laws of 1911, *supra. In re Local Improvement Sewer District No. 1,* 84 Wash. 565, 147 Pac. 199.

Subsequent to the enactment of the ordinance providing for the local improvement involved herein, the city council of Yakima passed a general ordinance renaming many of the streets of the city, and among others, renamed Miles avenue on the eastern border of appellants' tract 16th avenue south, and named or renamed the street, whatever it had been, on the north of appellants' tract, West Yakima avenue, from the west edge of Miles avenue, which is renamed 16th avenue south, to the city limits.

The assessment for the improvement by the city was made payable within thirty days after January 17, 1912, after the expiration of which time it was provided that bonds should be issued payable in ten annual installments for all unpaid assessments assessed in and for the improvement district.

In January, 1918, it was discovered that an error had been made in the description of a portion of the property belonging to appellants, in the assessment roll, in

that, instead of the *west* 120 feet of the south 180 feet
of their tract of land being improved, which did not
abut upon any street to be improved, the assessment
should have included and described the *east* 120 feet of
the south 180 feet of the tract, and the latter descrip-
tion had been omitted by mistake from the assessment
roll.

Thereupon, on February 7, 1918, the city commission
of Yakima passed resolution No. B-479, in which was
set forth that the east 120 feet of the south 180 feet of
the tract was omitted from such assessment, notifying
all persons who might be interested to appear at a meet-
ing of the city commission, at a time therein specified,
and present their objections thereto, which resolution
was duly published in the official newspaper of the city.
Notice was given that the hearing would be held on
February 25, 1918, at the hour of 10 o'clock a. m. at
the office of the city commission, and a hearing was had
thereon at that time. Neither the defendants nor any
other person appeared at the hearing, or in any manner
objected thereto, or to the inclusion of the property
omitted in the assessment roll, and thereupon ordi-
nance No. A-339 was passed providing for the assess-
ment of the correct tract of land, and confirmed the
assessment roll theretofore prepared covering the
omitted property and assessing the same for the im-
provement in the sum of $1,056.42, the amount the tract
had been and was specially benefited by reason of the
improvement.

No part of the assessments levied upon either the
original assessment or the reassessment, either prin-
cipal or interest, was paid. After the expiration of the
time provided for in the ordinance, local improvement
bonds were issued covering all the unpaid assessments,
including the property of appellants; the assessments
then became due in ten equal annual installments on

February 17, 1912, and annually thereafter to and including February 17, 1922, together with the penalty of five per cent as provided by law, and interest at the rate of seven per cent per annum.

The intervener herein, on May 28, 1915, purchased from the city certificates of delinquency in the sum of $438.11, and $1,113.64, respectively, covering the first two installments of principal and interest of the assessments.

The complaint alleged that on February 17, 1923, there was due and owing and unpaid to the city eight annual installments amounting in all, with penalty and interest, to the sum of $1,599.54, for the east one hundred twenty feet of the south one hundred eighty feet of the tract, and $3,825.05 for the north one hundred twenty feet of the tract, all bearing interest at the rate of seven per cent per annum from that date until paid. On February 17, 1923, all of the aforesaid assessments were certified by the city treasurer of Yakima to the county treasurer of Yakima county in the manner provided by law.

Appellants, for answer, have admitted and denied certain allegations of the complaint, and affirmatively alleged that the city was without jurisdiction or authority in passing the ordinance known as ordinance No. A-824, providing for the improvement of certain streets and avenues in the city, and in creating local improvement district No. 224; also that the city was without jurisdiction and authority to pass resolution No. B-479, and without jurisdiction and authority to pass ordinance No. A-339. It was further affirmatively alleged that that portion described in the proceeding as West Yakima avenue, north of the land belonging to appellants, was not a portion of West Yakima avenue, and never had been; that the city, at the time the alleged street was paved, did not have legal title to the same,

"and never has acquired legal title to the same," and that the city was without authority or jurisdiction in any manner whatever to pave and improve the same and charge the cost thereof to the adjacent lands.

Several contentions urged by appellants as to the invalidity of the method of assessment, are untenable.

[1] It appears in evidence that what the city called Linden Lane and afterwards named as an extension of West Yakima avenue, at one time belonged to an owner named Methuen. Prior to the initiation of the improvement proceedings involved herein, on April 20, 1902, Methuen, by warranty deed, conveyed to Harris Dills, Samuel Cameron, and H. M. Gilbert, and "to their heirs and assigns forever" the south thirty feet of the tract adjoining the Snively tract on the north, "to have and to hold to them and their heirs and assigns forever." There was a clause in the deed that the strip conveyed was to be "forever kept open and used as a roadway."

The clear implication of this conveyance is that it was a conveyance for a private easement or way of necessity. Dills owned, but did not reside upon, an acreage tract north of the Snively tract. He had an undisclosed intention to plat his land and subsequently did so, but did not dedicate any street to the south of his plat. There were some residents upon the tract to the north of the Snively tract by the names of Cameron, Gilbert, and Col. L. S. Howlett, the father-in-law of Cameron, who needed this roadway for access to their premises. Cameron, who was one of the grantees in the deed above referred to, afterwards died, and his widow, and sole successor in interest, together with Dills, Gilbert and their wives, on April 30, 1924, conveyed this tract of land to the city of Yakima to be forever kept open and used as a roadway.

This last conveyance was long subsequent to the improvement made on this strip, or on the street called Linden Lane, or West Yakima avenue, as it may be. In fact, it was made after the issues were made up in this case, and but a short time prior to the trial of the case, which was had on May 18, 1924.

Respondents contend that, as a matter of fact, the improvement on the street, which they originally claimed was called Linden Lane, is but a small portion thereof located on the strip of land deeded to the city.

[2] If that is true, it is impossible to determine from this record whether the city has title to any of the street bordering the Snively tract on the north, which it may improve, assessing the benefits to the adjacent property. There is no other title to any public thoroughfare than that shown by the Methuen deed to his grantees, and their deed to the city. While the engineer's map would seem to indicate otherwise, and to confuse the situation, we must assume that the city's title is derived from these grantees, because there is nothing else shown from which it could be derived.

[3] Respondents also contend that, even though the city did not have title to the right of way for the street or thoroughfare, its acquisition of title, at the time it did, would correct that defect and legalize the improvement and assessment.

1 Page & Jones, Taxation and Assessment, § 390, p. 592, is quoted to the effect that if the improvement is constructed upon land in which the municipality has neither a fee nor an easement of such a character that it has a right to make use of such land for that purpose, neither the general public nor the adjoining or abutting owners of property can be prevented by the arbitrary action of any third person from making use of such improvement according to its nature; citing also

*Dulaney v. Figg*, 123 Ky. 291, 94 S. W. 658; *Palmetto v. Katsch*, 86 Fla. 506, 98 So. 352.

But the Kentucky court emphatically decided that no lien can be asserted against the abutting property for the cost of street improvements, unless the street has been dedicated to the public.

The Florida case held that a municipality may acquire lands for public purposes by grant, dedication, condemnation, or prescription (as is the rule in this state, also), and that a common law dedication is the setting apart of lands for a public use, to constitute which there must be an intention by the owner clearly indicating by his words or acts the dedication of the land to a public use, and acceptance by the public of the dedication; that mere user by the public, although long continued, should be regarded as a license only, revocable at the pleasure of the owner, where it does not appear that any public or private interests have been acquired upon the faith of the supposed dedication; and that the mere fact that the use by the public for an extended period without the consent or objection of the owner does not show an intention to dedicate.

We have discovered no evidence in this case tending to show that those who acquired the strip of land along the north border of appellants' tract have dedicated it to the public for a street or avenue, or that it was ever used except for their own convenience; or that it was ever adopted by the city and generally used by the public; or which shows acquisition of title by prescription. The first jurisdiction of the city ever exercised over it, apparently, was in resolving to improve it at the expense of the adjoining property, and changing its name from Linden Lane to West Yakima avenue. The record discloses no instrument showing that any street was ever dedicated as Linden Lane.

Appellants accordingly contend, upon this state of the record, that Linden Lane was a private thoroughfare, and not a street or avenue, and that the city had no jurisdiction or authority to improve it by paving the roadway thereof, as governed by our decisions in *Allen v. Spokane,* 108 Wash. 407, 184 Pac. 312, and *Wiley v. Aberdeen,* 123 Wash. 539, 212 Pac. 1049.

While this writer did not concur in *Allen v. Spokane, supra,* it stands as the law, and holds that a property owner, in an action to cancel a street assessment, may show that the property improved was not a public street, since the city cannot acquire the property unless the public necessity is judicially determined, nor unless its cost can be found in assessments, or within the city's debt limit; and that the fact that the property owner petitioned for the improvement, and made affidavit that the property was a public street, would not estop him from maintaining an action to cancel the assessment, when it was found that the property was not public property.

[4] That case is authority for the proposition that the city was without jurisdiction to cause the roadway, to which it had no, or only doubtful, title, to be improved and the assessment to be levied upon the adjoining property to pay the cost thereof; and that those affected thereby were not estopped to contest the proceedings and the assessment because of the fact that they had not appeared and objected in any manner to the proceedings before the city council or commission.

*Barlow v. Tacoma,* 12 Wash. 32, 40 Pac. 382; and *Wingate v. Tacoma,* 13 Wash. 603, 43 Pac. 874; were distinguished from the *Allen* case, because in them there was no question as to the city's title to the street on which the improvement was made, and no question that the property of the complaining owner received

the benefit of the improvement. It was therefore said in the *Allen* case, *supra*:

"Here the facts are different. The property improved as a street was, at the time of the improvement, and still is, in private ownership. The property of the complainant has not received the benefit of the improvement. If he is compelled to pay for the improvement he parts with property for which he receives no return. He had a right to rely on the city's assumption of ownership of the property it improved as a street, and clearly ought not to be held estopped from questioning the assessment, unless he was guilty of some fraud or concealment when he petitioned for and acquiesced in the improvement."

It was also stated:

"The ultimate question was one which the city was required to determine and it was the only body which had the power to have it effectively determined. Since the title to the property was in doubt, it was the city's duty, before proceeding to improve it as a street, to remove the doubt. Having neglected this duty, it cannot be permitted to visit the loss upon another, who was innocent of wrong, and who had the right to assume that no duty required of the city had been neglected."

In that case, it will be observed, the proceedings to improve the street in question had been petitioned for by the then owner of the property, afterwards discovered not to be a street, who also filed an affidavit with the board of public works averring that the way had been

" . . . generally, habitually and universally traveled by the citizens and residents of the city of Spokane, and by the public at large, adversely, continuously, and uninterruptedly for a period of more than eleven years prior to the date of the affidavit; and that the same has been, during all of said time, and is now, used by said citizens of Spokane and the public at large as and for a public street."

No protest of any kind was made by the then owner of the property, which was afterwards sold to the complainants in that case. The improvement was inaugurated, completed and the owners, during that time, paid three installments of the assessments levied thereon. The new owners also paid the assessments for four years. Notwithstanding all that, it was held in the case that the property had not been taken for a public use, regardless of the declaration of the city authorities that it had been so taken.

Quite the contrary is the situation here.

In this case, the trial judge thought that,

"If objection had been made by the defendants at the time this improvement was initiated and it had then been determined that West Yakima avenue was in private ownership, undoubtedly the city would have been without jurisdiction to have levied any assessment. No action was taken, however, by the defendants at that time; and, while the question may yet be undetermined as to whether or not the effect of the deed of Dills, Cameron and Gilbert was to dedicate a street for the purposes of a public thoroughfare, it is the opinion of the court that any possible defect in the title had been cured by the deed of April 30, 1924, and, if the improvement actually benefited the defendants' land, they are in no position now to complain. The other objections have been cured, in the judgment of the court, by failure on the part of the defendants to object at the time and in the manner provided by statute."

The trial judge was right, in part: as to other objections urged by appellants being cured by failure on the part of appellants to object at the time and in the manner provided by statute.

But the trial judge was wrong in thinking that it was necessary for objections to have been made by appellants to the improvements by the city of privately owned property, at the time the improvements were

initiated, or while proceedings thereof were being prosecuted.

Under the rule stated in the *Allen* case, *supra,* appellants could rest quiescent upon the assumption that the city would acquire title to the right of way for the street and improvement, or at least, "remove the doubt" as to the title to the street before placing improvements upon it, and assessing the cost thereof to the adjoining property.

[5] However, in this case the city did, unlike the situation in that case, ultimately acquire title to the property on which the improvement was made. The abutting property does, therefore, receive the benefit of the improvement.

The majority of the court, therefore, are persuaded that the defect in the title was cured by the deed of April 30, 1924, and, the improvement actually benefiting appellants' land, that they are, since April 30, 1924, lawfully and equitably chargeable with the actual cost of the improvement and interest on the moneys actually expended therefor.

See, also, §§ 24, 60, 70, ch. 98, Laws of 1911; *Kuehl v. Edmonds,* 91 Wash. 195, 157 Pac. 850.

After due notice as required by law, the city ordained the reassessment of February 25, 1918, thereby dividing the assessments upon appellants' lands into two assessments upon two tracts. The north one hundred twenty feet along the entire length of the street, which was, as shown, 486.6 feet along the northern boundary, and something more than that on the southern boundary of the assessment area; and the west one hundred twenty feet which was not benefited at all by the street improvement under the proceedings of the city, as one tract, was originally assessed a total of $3,737.91. On reassessment, the west one hundred twenty feet of the south one hundred eighty feet being eliminated, and

the east one hundred twenty feet of the south one hun-
dred eighty feet being assessed under what was called
a reassessment, as its equitable apportionment ''of the
total cost of the improvement, according to the benefits
resulting to it,'' was assessed separately in the sum of
$1,056.42, without any provision for interest thereon.
Under this new assessment of the east one hundred
twenty feet of the south one hundred eighty feet, it is
apparent that the tract in the northeast corner of ap-
pellants' lands, one hundred twenty by one hundred
twenty, was not reassessed, but was left as a part of
the original assessment of the north one hundred twenty
feet, with the remaining assessment of $2,681.49
against it, with penalty and interest.

[6]   It has been held that no interest can be charged
where the reassessment ordinance did not provide for
it; *Elliott v. City of Portland,* 87 Ore. 47, 169 Pac. 504;
and that interest, which the land-owner must pay, does
not begin to run until such assessment has been defi-
nitely ascertained. *Newark Home Builders Co. v.
Bernards Tp.,* 90 N. J. L. 361, 103 Atl. 692.

The assessment as to the east one hundred twenty
feet of the south one hundred eighty feet was not
definitely ascertained and legally established until Feb-
ruary 25, 1918. The assessment against the north tract
was not legally established until, at the earliest, that
same date, for the original assessment was all in one
and included a void assessment. Indeed, we think it
could be justly said that it was never legally assessed
until the city acquired title to the abutting street.

The city had no right to attach interest and penalties
to that part of the assessment which had never been
legally levied. Since the lands of appellants were all
in one improvement district and under one system of
improvement, the city had no right to attempt to col-
lect interest and attach penalties under the invalid as-

sessment nor to enforce the same in this foreclosure proceeding.

Under the act under which the original proceedings were initiated (Laws of 1909, ch. 26), and under the later enactment (Laws of 1911, ch. 98), provision is made in both—

"In any suit for the foreclosure of said certificates of delinquency, if the court shall be satisfied that the work has been done or the material furnished which, according to the true meaning and intent of this act would be properly chargeable upon any lot or land in said local improvement district, the judgment shall include such proportion of the value of such work or materials as would be chargeable against such lots or land, notwithstanding any informalities, irregularities or defects in any of the proceedings of such municipal corporation or its officers."

We have approved the same rule under previous laws, *State ex rel. Latimer v. Henry,* 28 Wash. 38, 68 Pac. 368; *Lewis v. Seattle,* 28 Wash. 639, 69 Pac. 393.

Appellants admit that the work was done and their property benefited by the improvement.

Under ch. 98, Laws of 1911, and our decision in *Kuehl v. Edmonds,* 91 Wash. 195, 157 Pac. 850, the city would have the right to reassess to include interest. Instead of reassessing, the city may, at its option, to avoid further litigation and expense, within thirty days after the filing in the lower court of the remittitur herein, accept the sum of $3,737.91 originally assessed as the entire proportion of the total cost of the improvement abutting the lands of appellants, with interest as provided in the ordinance of seven per cent per annum from February 25, 1918, the date of the reassessment, giving written notice thereof to appellants, but without any penalties, unless appellants fail to pay the assessment so ordered within thirty days from the acceptance of this option by the city, when

the penalties provided by the statute and ordinance may attach.

The judgment is therefore reversed, and the cause remanded for further proceedings in conformity herewith.

TOLMAN, C. J., PARKER, MACKINTOSH, BRIDGES, and MITCHELL, JJ., concur.

MAIN, J. (dissenting)—I am not in accord with the majority opinion, wherein it holds that the deed of April 20, 1902, carried an implication that the conveyance was for a "private easement or way of necessity." The word "roadway" should not be given this restricted meaning, unless from the language of the deed it was made plain that that was the intention of the grantor. The ordinary meaning of the word is a highway which the public generally may use. In my opinion, the deed should be construed as a dedication of the strip of land covered thereby to the public for a highway. In the absence of an acceptance, this would not constitute it a public street. When the city either improved it or the city council passed a resolution authorizing the improvement, the dedication was accepted and it became a public highway. In Tiffany on Real Property (2d ed.), vol. 2, p. 1874, it is said:

"The acceptance of the dedication may be by formal action on the part of the state or municipality, as representing the public, but this is not usually necessary. Any action on the part of the municipality showing that it has assumed control of the land dedicated is sufficient evidence of acceptance. Repairs or improvements made by, or under the authority of, officers who have general charge of highways, and power to lay them out, may show an acceptance of the dedication of a highway, though repairs made by a merely subordinate officer would not have such an effect."

I therefore dissent.

ASKREN, J., concurs with MAIN, J.