[No. 38633.    Department Two.    June 29, 1967.]

PORT OF PENINSULA, *Appellant*, v. E. H. BENDIKSEN *et al.*,
*Respondents.**

*Bogle, Gates, Dobrin, Wakefield & Long* and *Robert A. Stewart,* for appellant.

*Reported in 429 P.2d 859.

*Helsell, Paul, Fetterman, Todd & Hokanson, William E. Clancy, Jr.,* and *Gary F. Linden,* for respondents.

DONWORTH, J.—This action was commenced by appellant, Port of Peninsula, to recover certain sums allegedly owed it by respondents as a result of respondents' use of a tidal basin, waterway, dock and trestle, and related facilities which are owned by appellant; for services rendered by appellant to the vessel *Einer B,* owned by respondents; and for respondents' use of three anchored moorages in the tidal basin, which are owned by appellant. Respondents agreed to payment of the charges based on services to the *Einer B,* and their use of the anchored moorages belonging to appellant, but denied liability for the use of the tidal basin, waterway, dock, and trestle.

The sums sought by appellant for respondents' use of the tidal basin and basin waterway are based on tariffs adopted by appellant and filed with the Washington Utilities and Transportation Commission (or its predecessor) in 1953, 1958, and 1961. By the terms of these tariffs, charges were made for, among other items, "Industrial Per Foot Frontage, Canneries, Annual" in the amount of $10 under the 1958 tariff, and $3.75 under the 1961 tariff. Respondents paid the Port's charges until 1959, but not since.

The case was submitted to the trial court on an agreed statement of facts. Following the submission to the court of written briefs and oral argument, the trial court entered written findings of fact and conclusions of law, and, based thereon, entered judgment for respondents on the claim based on respondents' use of the basin and related facilities; and for appellant in the amount of $127.50 on the agreed claims based on services to the *Einer B* and respondents' use of the anchored moorages. This appeal is from that portion of the judgment in favor of respondents.

Respondents are engaged in the business of gathering, processing, shipping and dealing in oysters, and, since 1943, have operated a cannery on property owned by them which abuts on appellant's tidal basin on the north, and on a dock

and trestle and shell-fill wharf, also owned by appellant, on the south.

The land on which the tidal basin and basin waterway are located (which was acquired by appellant in the 1950's) and the dock and trestle and related facilities are situated near the town of Nahcotta on Willapa Bay in Pacific County, wholly outside the corporate limits of appellant, Port of Peninsula, and wholly inside the corporate limits of the Port of Ilwaco.

The basin and basin waterway were dredged by the United States Government in 1958, and a breakwater was constructed by appellant. Appellant's cost of the project was $23,000. The tidal basin is concededly of great benefit to respondents, giving access to their cannery by water at low tide.

The dock and trestle, which abuts respondents' property on the south, was originally situated on a 30-foot-wide strip of property conveyed to Pacific County by deed dated June 5, 1909, for the use of the public forever as a public dock and highway.

Sometime after 1909, the dock and trestle were constructed on the 30-foot-wide strip, and, from then until about 1948, it was maintained by Pacific County. By deed, dated February 7, 1950, the land and the dock and trestle were conveyed to appellant by Pacific County.

In 1963, the 600 feet of dock and trestle nearest the shore were in a dilapidated and unsafe condition, and shortly thereafter appellant constructed the shell-fill wharf, of which only a few feet lie on the original 30-foot-wide strip. (For purposes of this suit, respondents do not challenge appellant's right, title, and interest to the land on which the shell-fill wharf is located, except such right as respondents may claim to the use of the wharf as may arise by operation of law.) That respondents make use of the dock and trestle and shell-fill wharf is not disputed. Nor is it disputed that appellant has spent over $9,688.94 in repairs and maintenance of the dock and trestle since 1950.

Then, on January 4, 1963, appellant and the Port of Ilwaco, within whose boundaries are located the facilities in-

volved in this action, entered into an agreement, purportedly pursuant to RCW 53.08.240, under which the Port of Peninsula was to:

> . . . undertake the acquisition, development, operation, maintenance, control and promotion of certain harbor improvements and dock and marine terminal improvements and facilities all as more particularly authorized and included in its comprehensive scheme of harbor improvements . . . .

The trial court's decision was based on its specific conclusions of law, all but one of which forms the basis for appellant's assignments of error, which are summarized by appellant in its brief as being that:

> 1. The Port's charge based on an annual rate per foot of frontage is a tax on an abutting property owner's access to a public way and is therefore invalid, and
> 2. That because the Port's Nahcotta facilities are outside the Port's corporate limits and because the joint operating agreement is invalid the Port cannot charge for the use of these facilities.

If the trial court's conclusions summarized as (2) above are correct, and no charge could be made by appellant for the use of these facilities, a discussion of the findings relating to the validity of the basis upon which those charges are made, summarized under (1) above, would be unnecessary. We, therefore, proceed to a consideration of the law relating to (2) only.

Appellant's argument in this regard is summarized in its brief as being that:

> 1. The [respondents'] cannery fronts on the Port's basin as well as on the Port's dock and public way, and the Port's tariff should be deemed to be a charge for access to the basin, not the dock and public way.
> 2. The Port's operation of the Nahcotta facilities is an exercise of a proprietary, not a governmental, function and therefore the defense of *ultra vires* is not available to [respondents].
> 3. Furthermore, the joint agreement between the Port of Peninsula and the Port of Ilwaco is a valid joint operating agreement.

We shall, for the purposes of this opinion, consider appellant's first argument above as well taken, and consider only the remaining two arguments on their merits.

Appellant's argument on the second point raised above is summarized in its brief as follows:

a. The Port's ownership and operation of the facilities at Nahcotta constitute an exercise of a proprietary function, not a governmental one.

b. In the exercise of a proprietary function, a municipal corporation is subject to the same burdens, liabilities, rights and privileges as a private corporation.

c. A debtor of a private corporation is not allowed to defeat the claim on the ground that the debt arose in an *ultra vires* exercise of the corporate power, when the contract has been fully executed and the debtor has received all of the benefits, and, for the same reason, [respondents] should not be allowed to avoid liability in this case.

What is involved in this case is an assessment (based on per-foot frontage rather than the extent of use of a facility) by a municipal corporation on lands lying outside its corporate limits. The question presented is whether the owner of that land, concededly benefited by the facility,[1] is estopped from asserting the defense of ultra vires in order to avoid the assessment. The cases considering this question have not distinguished between extraterritorial acts of a proprietary nature, and those of a governmental nature, nor do we choose to do so in this case. The cases cited by appellant dealing with the defense of ultra vires in connection with the contracts of private corporations are, therefore, not applicable.

■ The general rule applicable to the issue presented is stated in 63 C.J.S. *Municipal Corporations* § 1462 (b) to be that:

The doctrine of estoppel generally has no application in cases where the assessment is wholly or absolutely void.

---

[1] We are also aware of the letter, written by respondents to appellant, dated November 25, 1957 in support of this harbor development; and the provision in appellant's tariff to the effect that the use of the facilities shall be deemed an acceptance of the tariff and the terms and conditions thereof. However, neither of these affects this decision.

No act on the part of a property owner will confer jurisdiction of the subject matter on a municipal corporation with respect to making an assessment; nor will the act or conduct of a property owner estop him to question the validity of an assessment where there is a total lack of authority on the part of the municipal governing body to make the improvement involved or to levy the assessment therefor.

In *Edmonds Land Co. v. City of Edmonds*, 66 Wash. 201, 119 Pac. 192 (1911), the city of Edmonds attempted to levy an assessment on lands lying outside its boundaries to pay for the cost of building a sea gate constructed under the diking act of 1907. The land company brought suit to cancel the assessment. The city contended that the land company was estopped from avoiding the assessment because one in whom title to the land then rested as trustee for the owners, signed a petition asking for the improvement. This court held, at page 202:

> The city could not acquire jurisdiction over these outside lands by estoppel. The petition could be nothing more than a request to the city that it proceed within the powers conferred upon it by law in making this improvement. It could not act as authority to the city to proceed beyond and outside of any legal authority. And when the city departed from the exercise of its legal powers, it could not justify its departure upon the authority of any petition requesting it to do so.

The doctrine of estoppel was specifically held to be inapplicable in cases involving the assessment by a municipal corporation levied upon lands lying beyond its boundaries.

The *Edmonds Land Co.* case was relied on in *Allen v. Spokane*, 108 Wash. 407, 184 Pac. 312 (1919), and *Yakima v. Snively*, 140 Wash. 328, 248 Pac. 788 (1926). We deem it controlling on this issue in the present case.

*Port of Willapa Harbor v. Nelson Crab & Oyster Co.*, 15 Wn.2d 515, 131 P.2d 155 (1942), cited by appellant in support of his argument, is distinguishable on its facts.

■ Appellant next asserts that, even if respondents are not estopped from asserting the defense of ultra vires in this case, appellant should recover on the theory of an im-

plied or quasi contract. We do not agree. We are not convinced that the benefit accruing to respondents as a result of the establishment of the facilities involved in this case is an unjust enrichment for which appellant is entitled to compensation from respondents. See *Chandler v. Washington Toll Bridge Authority*, 17 Wn.2d 591, 137 P.2d 97 (1943).

Much of our foregoing discussion is based on the assumption that no statutory authority exists whereby a municipal corporation may levy an assessment on lands lying outside its boundaries. Such is the general rule in the absence of express or implied statutory authority. *Edmonds Land Co. v. City of Edmonds, supra.*

■ However, the legislature has provided in Laws of 1961, ch. 24, § 1 (RCW 53.08.240) that:

> Any two or more port districts shall have the power, by mutual agreement, to exercise jointly all powers granted to each individual district, and in the exercise of such powers shall have the right and power to acquire jointly all lands, property, property rights, leases, or easements necessary for their purposes, either entirely within or partly within or partly without or entirely without such districts: *Provided*, That any two or more districts so acting jointly, by mutual agreement, shall not acquire any real property or real property rights in any other port district without the consent of such district.
>
> A district may enter into any contract with the United States, or any state, county, or municipal corporation, or any department of those entities, for carrying out any of the powers that each of the contracting parties may by law exercise separately.

The agreement between appellant and the Port of Ilwaco, purportedly pursuant to the above statute, provided, in part, that:

> (1) The PORT OF PENINSULA shall undertake the acquisition, development, operation, maintenance, control and promotion of certain harbor improvements and dock and marine terminal improvements and facilities all as more particularly authorized and included in its comprehensive scheme of harbor improvements under Resolution No. 6 A of the PORT OF PENINSULA, . . . .

(2) The PORT OF ILWACO agrees that during the term of this agreement it will not undertake any port district activity or development calling for the construction of improvements or facilities within the area encompassed by the said comprehensive scheme of harbor improvements of the PORT OF PENINSULA, provided, however, that this agreement shall not be deemed to prohibit the PORT OF ILWACO from acquiring, improving, developing, operating and maintaining harbor improvements or facilities within the aforesaid area so long as such activity on the part of the PORT OF ILWACO shall not interfere in any substantial manner with the full development by the PORT OF PENINSULA of its aforesaid comprehensive scheme of harbor improvements.

(3) The PORT OF PENINSULA agrees to undertake *full and sole responsibility* for the carrying out of its scheme of improvements as authorized in its Resolution No. 6 A and it does hereby further agree to indemnify and save harmless the PORT OF ILWACO with respect to any claim or expenditure that may be asserted against the PORT OF ILWACO by reason of any of the activities of the PORT OF PENINSULA in the carrying out of its plans . . . .

(4) It is agreed by the parties that *the development of the facilities hereinabove described shall be the primary responsibility of the* PORT OF PENINSULA but that the said development shall be participated in by the Port of Ilwaco, as *a joint operation, to the extent that the parties may subsequently agree upon.* (Italics ours.)

The trial court's conclusion of law relating to this agreement provided, in part, that:

The agreement dated January 4, 1963, between plaintiff and the Port of Ilwaco . . . does not constitute an agreement for joint exercise of powers or joint acquisition of properties within the meaning of RCW 53.08.240 or any other statute of the State of Washington permitting a port district to own or operate improvements located outside the boundaries of such district.

No authorities are cited by either of the parties wherein this court has construed this statutory provision, nor has our own research revealed any. Appellant points to the similarity of language between this statute and RCW 54.16.200, which provides for the joint exercise of powers and joint acquisition of properties by *public utility dis-*

*tricts,* which this court considered in *Roehl v. PUD No. 1,* 43 Wn.2d 214, 261 P.2d 92 (1953). However, neither that case nor any other to which our attention has been directed answers the question raised here.

We are of the opinion, with the trial court, that the agreement involved in this case does not meet the requirements of RCW 53.08.240. What the statute contemplates is a mutual agreement for the joint exercise of powers, not the joint agreement for the sole exercise of certain powers by one port district within the boundaries of the other.

In conclusion, we hold that the attempted assessment in this case was wholly unauthorized, and under the circumstances of this case, respondents were not estopped from asserting as a defense, the lack of authority on the part of appellant.

Having concluded that appellant is without authority to levy the disputed assessments in this case, it is unnecessary to consider the trial court's conclusion of law relating to the validity of the basis on which such assessments were computed.

The judgment of the trial court is, therefore, affirmed.

FINLEY, C. J., WEAVER, J., and LANGENBACH, J. Pro Tem., concur.

---

October 4, 1967. Petition for rehearing denied.