[No. 74526-9. En Banc.]
Argued September 28, 2004. Decided September 8, 2005.

TIFFANY FAMILY TRUST CORPORATION, *Petitioner*, v. THE CITY OF KENT, *Respondent*.

*Richard M. Peterson* and *Stephen H. Roos* (of *Hillis Clark Martin & Peterson, P.S.*), for petitioner.

*P. Stephen DiJulio* and *Ramsey E. Ramerman* (of *Foster Pepper & Shefelman, P.L.L.C.*), and *Thomas C. Brubaker* (of *City of Kent Legal Department*), for respondent.

¶1 FAIRHURST, J. — Tiffany Family Trust Corporation asks us to find that a $364,939 local improvement district (LID) assessment was an unconstitutional taking and a violation of due process. Because Tiffany failed to use the

mandatory statutory procedure for challenging LID assessments, the city's assessment against Tiffany is conclusively correct and for that reason Tiffany's state and federal constitutional claims are without substance.

## I. FACTS

¶2 In 1986, Tiffany obtained a conditional use permit from the city of Kent to increase its nonindustrial usage (retail, office, and/or service uses) by 10 percent (from 25 to 35 percent).[1] In order to mitigate some of the environmental impacts which would result from the proposed development, the permit required Tiffany to pay a proportional amount of the related cost of improvements to nearby roads. Tiffany and the city subsequently entered into a mitigation agreement. The agreement estimated that the proportional cost that Tiffany would be responsible for would be $23,800. This amount was estimated based on a per peak hour trip formula.[2] The parties to the agreement noted, however, that the final cost would be based on "actual expenses incurred at the time said improvements" were constructed and, thus, the amount quoted was merely an estimate to be determined in the future. Clerk's Papers (CP) at 69.

¶3 Rather than requiring any payment at the time the permit was granted, payment for the improvements was to be made pursuant to the formation of a LID. Local governments are vested with the authority to "defray the cost of local improvements" by specially assessing those nearby properties that are benefited from the improvements. Philip A. Trautman, *Assessments in Washington*, 40 WASH. L. REV. 100, 100 (1965); *see also* ch. 35.43 RCW. In the mitigation

---

[1] The agreement was actually entered into between the city of Kent and another party, B.B.C., Inc., but Tiffany subsequently gained ownership of the property and is the party in the current action, fully subject to the agreements of B.B.C. Thus, Tiffany refers to both the prior owner and the Tiffany Family Trust Corporation.

[2] "Per peak hour" refers to how many additional peak hour trips the development was estimated to cause on nearby roads. The total estimated cost of the improvements would then be divided based on the number of additional per peak hour trips. Clerk's Papers at 69.

agreement, Tiffany agreed to participate in and refrain from protesting the formation of the LID. The parties also agreed that Tiffany's property would be "specially benefited and its value increased" by the LID improvements in an amount *not less* than $23,800—the same amount for which Tiffany would be responsible due to the impacts of its own development. CP at 69.

¶4 In 1998, 12 years after Tiffany and the city entered into the mitigation agreement, the LID in which Tiffany agreed to participate was formed. The city assessed amounts against the properties within the LID by determining their fair market values before and after the special benefit resulting from the LID attached. The appraiser assessed Tiffany's property at $364,939—over 10 times greater than the original estimate.

¶5 The city sent notices to Tiffany regarding the LID assessments via regular mail to the address listed on the county assessor's rolls and in the mitigation agreement. Tiffany maintains that it did not receive any of those notices. After the assessment roll was confirmed by the city in 1999, the city mailed notice to affected properties by certified mail. The notice sent to Tiffany was returned unclaimed.

¶6 Tiffany alleges that it learned of the LID assessment only because of an unrelated title search it conducted in April 1999. Tiffany filed suit in King County Superior Court in February 2000, alleging that the assessment was an unconstitutional taking and violated substantive and procedural due process. The complaint included similar claims under 42 U.S.C. § 1983 asserting civil rights violations. Tiffany requested the court to declare the assessment void and require the city to pay just compensation and damages.

¶7 The parties filed cross-motions for summary judgment. The trial court granted the city's motion and dismissed the suit. It determined that the statutory time period for attacking the assessments had passed, and Tiffany could not get around that bar by collaterally attacking the assessment using the same arguments disguised as

constitutional claims that it would use in a direct attack. The court additionally found no jurisdictional defect that would allow for a collateral attack.

¶8 Tiffany petitioned this court for direct review. This court deferred its decision to accept or deny review pending the outcome in *Benchmark Land Co. v. City of Battle Ground,* 146 Wn.2d 685, 49 P.3d 860 (2002). After *Benchmark Land Co.* was decided, *Tiffany* was transferred to the Court of Appeals.

¶9 The Court of Appeals affirmed the trial court order dismissing Tiffany's suit holding that Tiffany was procedurally barred from raising its claims. The court noted that even a claim that an assessment exceeds special benefits cannot be brought collaterally if the statutory procedures were not utilized (and as long as those procedures satisfy due process requirements). *Tiffany Family Trust Corp. v. City of Kent,* 119 Wn. App. 262, 274, 77 P.3d 354 (2003). We granted Tiffany's petition for discretionary review. *Tiffany Family Trust Corp. v. City of Kent,* noted at 151 Wn.2d 1018, 91 P.3d 94 (2004).

## II. ANALYSIS

¶10 This court reviews a grant or denial of summary judgment de novo. *Green v. A.P.C.,* 136 Wn.2d 87, 94, 960 P.2d 912 (1998). Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." CR 56(c). A party opposing summary judgment may not rely on "mere allegations or denials" set forth in the pleadings but rather "must set forth specific facts showing that there is a genuine issue for trial." CR 56(e).

A. What is the nature of the amount the city imposed against Tiffany?

¶11 As an initial matter, we must determine whether the amount that the city assessed against Tiffany was a mitigation fee or a LID assessment. This is necessary because

Tiffany alleges that the amount was an unconstitutional taking and a violation of substantive due process. To make such an allegation, Tiffany must show that the amount was in excess of, or bore no relationship to, the legitimate purpose for which it was purported to be assessed. Because mitigation fees and LID assessments have different underlying purposes, we must decide the nature of the assessment before we can determine its constitutionality. Tiffany argues that the amount should have been a mitigation fee but in any event it claims the takings and due process provisions were violated. The city maintains that the amount is and always has been a LID assessment.

### 1. LID assessments

¶12 Under RCW 35.43.040, municipal corporations are vested with the authority to make local improvements and to require properties specially benefited by those improvements to help cover the costs through LID assessments. Cities need not obtain the permission of benefited property owners in order to make such improvements and assessments. They must, however, provide adequate notice to affected properties so that owners may challenge the amount, existence, or character of the assessments before they become final. RCW 35.43.125, .150.

¶13 LID assessments must be based on the special benefits that properties acquire as a result of improvements to the area. RCW 35.44.010. Special benefits are determined by comparing the fair market values of each property before and after the improvements are made. *Bellevue Assocs. v. City of Bellevue*, 108 Wn.2d 671, 675, 741 P.2d 993 (1987). Once it is determined that a property is specially benefited, any LID assessment must be logically related to, and cannot exceed, the special benefit amount. RCW 35-.44.010; RCW 35.51.030(2). This can be done by the zone and termini method outlined in chapter 35.44 RCW, the alternative method based on classification in RCW 35-.51.030, or any other method "which may be deemed to more fairly reflect the special benefits to the properties

being assessed." RCW 35.44.047. In 1993, however, this court discredited the "trip generation" formula for determining the amount of LID assessments because the formula had no relationship to the special benefits that properties incurred from LIDs. *Bellevue Plaza, Inc. v. City of Bellevue*, 121 Wn.2d 397, 418, 851 P.2d 662 (1993).

### 2. State Environmental Policy Act mitigation conditions

¶14 Mitigation fees, on the other hand, are subject to very different standards. An environmental impact mitigation fee is initially provided for under the State Environmental Policy Act (SEPA), chapter 43.21C RCW. SEPA allows local governments to condition development "to mitigate specific adverse environmental impacts" that would result from the proposed development. RCW 43-.21C.060. Thus, in exchange for the adverse impacts that the proposed development is anticipated to have on the surrounding area, the developer agrees to either act in some manner or pay for a portion of nearby improvements intended to address those impacts. An impact fee may also be imposed under RCW 82.02.050; however, a government may not charge for the same impact under both RCW 43-.21C.060 and RCW 82.02.050.

¶15 Mitigation conditions must be reasonable and capable of mitigating "specific adverse environmental impacts." RCW 43.21C.060. One accepted formula for determining the amount of a mitigation fee is based on the increased peak hour trips a given development will generate in the relevant area. *Bellevue Plaza*, 121 Wn.2d at 416.

¶16 Thus, while mitigation conditions are imposed to remedy the *burdens* developers impose on others, LID assessments require landowners to pay for the *benefits* they receive from local improvements. In light of these two different purposes, a municipality has the authority to both collect assessments to pay for local improvements and impose mitigation conditions based on the impacts of any property owner's proposed development or use—the impo-

sition of one does not necessarily invalidate the ability to collect on the other.

### 3. *The amount assessed against Tiffany*

■ ¶17 While Tiffany and the city originally entered into a mitigation agreement, we conclude that what ultimately resulted 12 years later was a LID assessment. Our reasons are twofold. First, as noted above, the city had independent authority to form a LID and make assessments pursuant to that LID. Thus, regardless of whether or not there was a mitigation agreement, the city was authorized by law (RCW 35.43.040) to form the LID and make the assessment against Tiffany. Second, the city not only claimed it was making a LID assessment, but it acted pursuant to statutory procedures in forming the LID and making assessments, including that imposed upon Tiffany. The amount assessed against Tiffany was not purported to be under the authority of SEPA or any other statutes other than those governing LIDs. Any argument that the amount exceeded special benefits or was made without reference to special benefits, therefore, should have been made within the context of challenging the LID assessment.[3]

¶18 The heart of Tiffany's argument, then, is that the city assessed a disproportionate amount against it. The city has never characterized the amount imposed on Tiffany as anything but a LID assessment, and for the above reasons we will analyze Tiffany's claims in that context. We next determine whether Tiffany may challenge the assessment as excessive or otherwise incorrect despite its failure to follow statutory procedures in doing so.

### B. Is Tiffany barred from attacking the assessment?

■ ¶19 Our case law clearly states that LID assessments in excess of special benefits received are prohibited

---

[3] Additionally, although at times Tiffany asserts that the city failed to comply with the mitigation agreement, Tiffany only challenges the validity or effect of the mitigation agreement within the scope of its argument disputing the amount and existence of the LID assessment. Thus, even its argument that the amount is improperly characterized as a LID assessment should have been made within the statutory procedure for challenging the assessment.

and result in a taking. *Heavens v. King County Rural Library Dist.*, 66 Wn.2d 558, 404 P.2d 453 (1965); *Behrens v. Commercial Waterway Dist. No. 1*, 107 Wash. 155, 181 P. 892, 185 P. 628 (1919). Property owners wishing to challenge a LID assessment must do so before the final assessment roll is confirmed. RCW 35.44.190. Prior to final confirmation, the city must hold a hearing where the legislative authority considers all timely filed objections to the assessment roll before making its decision. RCW 35-.44.070. Further, property owners who file timely objections are entitled to appeal the decisions of legislative authorities. *Id.* The notice of appeal must be filed within 10 days of the assessment roll's final confirmation. RCW 35.44.210.

¶20 The legislature clearly intended to preclude attacks on assessments not made pursuant to the statutory procedures:

> Whenever any assessment roll for local improvements has been confirmed by the council, the regularity, validity, and correctness of the proceedings relating to the improvement and to the assessment therefor, including the action of the council upon the assessment roll and the confirmation thereof shall *be conclusive in all things upon all parties. They cannot in any manner be contested or questioned in any proceeding by any person* unless he filed written objections to the assessment roll in the manner and within the time required by the provisions of this chapter and unless he prosecutes his appeal in the manner and within the time required by the provisions of this chapter.

RCW 35.44.190 (emphasis added). However, this court has recognized the superior courts' original jurisdiction under article IV, section 6, of our state constitution to hear cases involving the legality of an assessment[4] by allowing chal-

---

[4] Washington Constitution article IV, section 6 provides in part:

The superior court shall have original jurisdiction in all cases at law which involve the title or possession of real property, or the legality of any tax, impost, assessment, toll, or municipal fine .... Said courts and their judges shall have

lenges to proceed on the merits (that have nonetheless failed to comply with the statutory procedures) when parties allege jurisdictional defects in the LID proceedings. We have found jurisdictional defects present when a city failed to give statutory notice of proceedings to confirm the assessment roll,[5] when improvement was not for public benefit, and when improved property was not public property. *See, e.g., Pratt v. Water Dist. No. 79*, 58 Wn.2d 420, 363 P.2d 816 (1961) (failed notice); *Wiley v. City of Aberdeen*, 123 Wash. 539, 212 P. 1049 (1923) (not for public benefit); *City of Yakima v. Snively*, 140 Wash. 328, 248 P. 788 (1926) (not public property); *Allen v. City of Spokane*, 108 Wash. 407, 184 P. 312 (1919) (not public property).[6] But these defects

power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, and writs of habeas corpus, on petition by or on behalf of any person in actual custody in their respective counties.

This form of review is entirely discretionary. *Clark County Pub. Util. Dist. No. 1 v. Wilkinson*, 139 Wn.2d 840, 846, 991 P.2d 1161 (2000).

[5] In addition to its claim that its assessment was excessive, Tiffany also claims it received inadequate notice of the LID. It argues that it was entitled to greater notice than required by statute because of the terms of the mitigation agreement and the property interest at stake. We are not convinced. RCW 35.44.180 provides: "The mailing of any notice required in connection with municipal local improvements shall be conclusively proved by the written certificate of the officer, board, or authority directed by the provisions of the charter or ordinance of a city or town to give the notice." RCW 35.43.150 and 35.44.090 require that the city mail notice of assessment proceedings to the addresses that are on file with the county assessor and county treasurer. These statutes satisfy constitutional requirements. *Pratt v. Water Dist. No. 79*, 58 Wn.2d 420, 424, 363 P.2d 816 (1961); *see also Wenatchee Reclamation Dist. v. Mustell*, 102 Wn.2d 8, 102 Wn.2d 721, 726, 684 P.2d 1275 (1984) (holding United States Supreme Court precedent requires "personal service or mailed notice" to property owners whose names and addresses are discoverable). Contrary to Tiffany's argument, the plain words of the mitigation agreement did not require notice to be by certified mail. CP at 151, § 3.5 ("Any notice or demand required or permitted to be given under this agreement shall be sufficient to be given in writing, and *if sent by registered or certified mail*, return receipt requested, to the address of the parties set forth below."). Additionally, because Tiffany claims it never received the final assessment notice, which was sent by certified mail, there is nothing to suggest it would have received any prior notices if sent by certified rather than regular mail.

[6] We have also found a jurisdictional defect where property was by law not subject to assessment under the LID because of a preexisting judgment. *Seattle & Puget Sound Packing Co. v. City of Seattle*, 51 Wash. 49, 51, 97 P. 1093 (1908). In Tiffany's case, there was no such restriction upon its inclusion, and rather Tiffany specifically agreed that it would be specially benefited and would participate in the LID in the mitigation agreement. Tiffany had no judgment to rest upon like the party in *Seattle & Puget Sound Packing Co.*

all go to the underlying legality of the entire LID. *See Clark County Pub. Util. Dist. No. 1 v. Wilkinson*, 139 Wn.2d 840, 845-46, 991 P.2d 1161 (2000) ("The purpose of such a writ [under article IV, section 6] is 'to enable a court of review to determine whether the proceedings below were within the lower tribunal's jurisdiction and authority.'" (quoting *Saldin Secs., Inc. v. Snohomish County*, 134 Wn.2d 288, 292, 949 P.2d 370 (1998))); *accord Heavens* 66 Wn.2d at 562 (allowing review despite failure to follow statutory procedure because the argument was that the LID could not specially benefit *any* properties).

¶21 Our courts have strictly construed what constitutes a jurisdictional defect. *See* Trautman, *supra*, at 126-27. Challenges directed toward the amount of a specific assessment or the methodology employed to determine assessments are not jurisdictional defects and must be brought within the existing statutory framework. *City of Longview v. Longview Co.*, 21 Wn.2d 248, 252, 150 P.2d 395 (1944). In *Longview* we stated in no uncertain terms:

> We have repeatedly held that, in view of the explicit terms of this statute, none but jurisdictional defects in the proceedings will serve to defeat an assessment upon property of an owner who has failed to file objections to the confirmation of the assessment roll. Objections that an assessment was made without regard to benefits, or in excess of benefits, or in excess of actual cost of the improvement, or in excess of charter limitations, are not jurisdictional and will not serve to defeat the assessment.

*Id.* at 252. This is because these objections do not serve to invalidate the entire underlying LID. Once the time period for challenging assessments has passed, LID assessments may not be collaterally attacked and as such are deemed conclusively correct absent a jurisdictional defect. In the same cases in which we have held that special assessments made in excess of special benefits constitute a taking, we have just as clearly stated that such challenges must be made pursuant to statutory procedure unless a jurisdictional defect exists. *See Heavens*, 66 Wn.2d at 562 (noting

that a claim alleging one property was overassessed must be made within the statutory framework, and only because the claim at issue alleged that the entire LID was unauthorized could the constitutional claim survive); *Hargreaves v. Mukilteo Water Dist.*, 43 Wn.2d 326, 329, 331-32, 261 P.2d 122 (1953) (reviewing appeal of timely statutory challenge to assessment, holding that assessment substantially exceeding special benefits constitutes a taking, but stating in no uncertain terms that "[t]he property owner should make his protest at the time and in the manner provided by statute; otherwise he may waive his right to attack the assessment."); *Alexander v. City of Tacoma*, 35 Wash. 366, 375, 77 P. 686 (1904) (precluding collateral attack based on allegation that assessment exceeded special benefits). In over 100 years of precedent, we have clearly held that the statutory procedure for challenging special assessments is the exclusive means for attacking assessments as excessive or otherwise incorrect.

¶22 Tiffany concedes that it did not comply with the above-described procedure for challenging LID assessments. It did not challenge the validity or amount of the LID assessment until over one year after the assessment roll was confirmed. In Tiffany's present suit, Tiffany is challenging the amount and methodology used to arrive at the amount for a specific assessment, arguing it is excessive. It does not, and cannot, contend that the entire LID is illegal and without basis. There was no jurisdictional defect that would allow for an exercise of jurisdiction despite failure to follow the requisite statutory procedure.[7] Tiffany was required to use the prescribed statutory procedure for challenging the assessment and it failed to do so. Accordingly, the assessment is conclusively correct and "cannot in any manner be contested or questioned in any proceeding

---

[7] Tiffany argues that because it asserts violations of constitutional rights, it has claimed a jurisdictional defect. We have never held that *any* allegation of a constitutional violation would serve to disrupt the statutory procedure for challenging LID assessments. Rather, the allegation would have to show that the entire LID was illegal or that statutory notice was not provided. Tiffany has not shown either.

by any person." RCW 35.44.190.[8] Thus, the superior court properly determined that it did not have jurisdiction to determine whether the assessment was correct. Under RCW 35.44.190, the assessment stands as a proper measure of the special benefits received. Tiffany's first cause of action claiming an unlawful assessment is therefore barred. CP at 11.

¶23 Given that the assessment is conclusively correct and may not now be challenged, Tiffany's second, third, and fifth causes of action, alleging state and federal takings and federal due process claims, also cannot survive.[9] They are premised on Tiffany's contention that the final assessment exceeds special benefits (takings) and therefore is "unreasonable, arbitrary, capricious, and unduly oppressive" (substantive due process).[10] CP at 11-12. But under RCW 35-.44.190, the assessment is conclusively correct and no longer susceptible to challenge. Tiffany's claims must accept as true that the assessment properly reflects the special benefits received. Once that is established, there is nothing left of Tiffany's constitutional claims.[11]

---

[8] The dissent attempts to distinguish the relief Tiffany could have obtained by challenging its assessment through the statutory procedures from the relief Tiffany now seeks through its takings and due process claims, but they are one and the same. In both cases, the excessiveness of the assessment with respect to the special benefits received is the alleged error in the city's conduct, and in both cases Tiffany seeks a monetary award equal to the assessment amount (minus the amount agreed to in the mitigation agreement). *See, e.g.*, dissent at 244, 245-46, 248.

Moreover, Tiffany conceded to the superior court that the only relief it sought in the summary judgment proceedings was a remand back to the city for a redetermination of the assessment amount. CP at 246. Until recently, its constitutional arguments were directed precisely at *changing* the assessment amount. They were not, as the dissent attempts to recharacterize Tiffany's arguments, "premised upon the finality of the assessment." Dissent at 244.

[9] As discussed above in footnote 5, Tiffany's fourth cause of action, procedural due process, is without merit.

[10] To the extent that Tiffany argues the amount assessed against it is unreasonable, arbitrary, capricious, and unduly oppressive because it does not fairly reflect the mitigation agreement, we also reject the claim because we concluded in part II.A that the amount assessed by the city must be analyzed as a LID assessment and not a mitigation condition.

[11] The dissent maintains we are applying a 10-day statute of limitations to all 42 U.S.C. § 1983 actions challenging LID assessments, which would contradict the

■ ¶24 Additionally, although Tiffany now asserts it is independently entitled to damages for alleged constitutional violations pursuant to 42 U.S.C. § 1983, it made no such argument before the superior court in either its motion for summary judgment or in its opposition to the city's motion to dismiss and cross-motion for summary judgment. The only issues we are reviewing are those which were before the superior court when it issued its order denying Tiffany's motion for summary judgment and granting the city's motion to dismiss and cross-motion for summary judgment. *See* CP at 334-36. In all of the motions and memorandums in this regard, Tiffany's constitutional claims were asserted only insofar as it argued it was entitled to a redetermination of the LID assessment. Tiffany has first and foremost always requested an adjustment to the amount assessed against it. *See, e.g.*, CP at 13 (requesting "judgment be entered against the City in favor of Tiffany nullifying the LID assessment levied by the City against the Tiffany property and prohibiting the City from enforcing such assessment.");[12] CP at 45 (arguing in its

Ninth Circuit's decision in *Shouse v. Pierce County*, 559 F.2d 1142 (9th Cir. 1977). We are doing no such thing. In *Shouse*, the Ninth Circuit refused to foreclose an equal protection claim brought under § 1983 simply because the petitioner had failed to challenge the formation of a utility LID within 30 days as prescribed by RCW 36.94.240. The petitioner in *Shouse* was claiming that one of the LID formation statutes was unconstitutional. *Shouse*, 559 F.2d at 1145. The Ninth Circuit rejected respondent's arguments that the petitioner's equal protection challenge to the statute was barred for failure to challenge the formation of the LID within 30 days, stating "[t]he statute was not designed to reach federal constitutional attacks on the statute itself, but, even if that intent were present, we would not borrow a 30-day limitations period in a civil rights action." *Id.* at 1146. Here, Tiffany's federal constitutional claims do not fail for failure to bring them within 10 days; they fail because they do not state a claim for relief. In contrast to *Shouse*, where an equal protection challenge to a LID formation statute could not have been made within the regular LID proceedings, and the substance of the petitioner's equal protection claim would be unaffected by any conclusive correctness to an assessment made against the petitioner, here the basis of Tiffany's claims challenge the accuracy of the LID assessment imposed by the city. That accuracy is no longer susceptible to challenge. If Tiffany had any other basis for relief other than the alleged inaccuracy of the LID assessment, its claims might survive. Instead, Tiffany has repeatedly asserted that the assessment constitutes a taking and a violation of substantive due process because it does not reflect the special benefits Tiffany received.

[12] Tiffany also requested in its complaint a judgment "for just compensation for the taking of property through the LID assessment," but narrowed its request in

motion for summary judgment that the city's actions represent "an unconstitutional taking, and requires a remand to allow for reassessment consistent with applicable principles of law."); CP at 246 (conceding that its motion for summary judgment "only seeks an injunction to give Tiffany a chance to be heard before the Kent City Council," and asking for the court to "give Tiffany a fair chance to be heard on an assessment that amounts to almost one-third of its entire land value"); CP at 310 (arguing in its reply memorandum in support of its motion for summary judgment that the disparity in the assessment amount constitutes an "unconstitutional error of law *in the City's assessment*" (emphasis added)). Tiffany's first and only mention of § 1983 after its initial complaint was a footnote in its *reply* memorandum in support of its motion for summary judgment. CP at 311. It stated without reference to additional authority that "[e]ven if the various constitutional violations alleged in Tiffany's complaint are not jurisdictional defects under *Patchell* [*v. City of Puyallup*, 30 Wn. App. 937, 639 P.2d 776 (1982)], Tiffany remains entitled to relief from such violations under 42 U.S.C. § 1983." *Id.* n.1. Tiffany continued to seek as relief only a remand to the city. CP at 314. Because such a remand would be barred under RCW 35-.44.190, the trial court properly denied Tiffany's motion for summary judgment and granted the city's motion to dismiss and for summary judgment.

C.   Is the city entitled to sanctions under RAP 18.9?

¶25 The city asks for attorney fees as sanctions pursuant to RAP 18.9. It argues that Tiffany's appeal was frivolous.

---

its motion for summary judgment (the denial of which is what we are reviewing), where it asked the court only to remand the matter for a redetermination of the LID assessment. CP at 13 (complaint); CP at 45-46 (motion for summary judgment); CP at 310 (asking again in its reply memorandum in support of its motion for summary judgment for "a remand so that [Tiffany] may be heard on this assessment," and conceding that "Tiffany has always accepted its obligation to contribute to traffic improvements in the Kent area, and has been perfectly willing to pay an assessment reasonably close to the $23,800 plus cost of living set forth in the EMA [environment mitigation agreement].").

"In determining whether an appeal is frivolous and was, therefore, brought for the purpose of delay, justifying the imposition of terms and compensatory damages, we are guided by the following considerations: (1) A civil appellant has a right to appeal under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant; (3) the record should be considered as a whole; (4) an appeal that is affirmed simply because the arguments are rejected is not frivolous; (5) an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal."

*Green River Cmty. Coll. Dist. No. 10 v. Higher Educ. Pers. Bd.*, 107 Wn.2d 427, 442-43, 730 P.2d 653 (1986) (quoting *Boyles v. Dep't of Ret. Sys.*,105 Wn.2d 499, 509, 716 P.2d 869 (1986) (Utter, J., concurring in part, dissenting in part)). We find that the parties set forth debatable issues and, therefore, decline to award sanctions under RAP 18.9.

### III. CONCLUSION

¶26 We hold that the trial court properly dismissed each of Tiffany's five causes of action because the LID assessment was conclusively correct once the time period for challenging it had passed. Because the court lacked jurisdiction to collaterally review the propriety of the LID assessment and because Tiffany's state and federal constitutional claims were premised on its assertion that the assessment was in excess of special benefits and as such unreasonable, arbitrary, capricious, and unduly oppressive, Tiffany's claims are without substance. The trial court lacked jurisdiction to grant the relief Tiffany sought—a redetermination of the assessment amount. We do not award sanctions to the city. We affirm the Court of Appeals in all respects.

ALEXANDER, C.J.; C. JOHNSON, MADSEN, BRIDGE, CHAMBERS, and OWENS, JJ.; and IRELAND, J. Pro Tem., concur.

¶27 SANDERS, J. (dissenting) — This proceeding is an original action seeking (1) just compensation for property

taken by assessment in excess of the special benefit and (2) damages for property deprived absent substantive due process. Even if an assessment is achieved through strict adherence to all state and local procedures, it may still accomplish a taking of property for which just compensation is due, or it may be so unduly oppressive as to deprive the owner of his property absent substantive due process.[13]

¶28 Tiffany Family Trust Corporation (Tiffany) properly brings its state inverse condemnation claim seeking just compensation for a final local improvement district (LID) assessment, claiming this final assessment exceeds any special benefit to the property. If this court rejects that inverse condemnation claim, Tiffany's 42 U.S.C. § 1983 federal takings claim is ripe because the state remedy for compensation is unavailing. Tiffany's companion federal claim that its property has been deprived by state action absent that process due under the fourteenth amendment to the United States Constitution is an entirely separate claim deserving independent consideration. However, the majority dismisses all claims under 42 U.S.C. § 1983, asserting the claims were not properly raised in the trial court. The majority errs, as discussed below.

¶29 In 1986 the owner of the subject property applied for a conditional use permit to increase its industrial use from 25 percent to 35 percent. The city of Kent granted the permit conditioned on the owner's promise to enter an environmental mitigation agreement (EMA). To mitigate the 17 additional peak-hour trips caused by the new use, the owner agreed to pay a sum then estimated at $23,800 under a LID to be formed at a future date.

¶30 The LID was formed in 1998. Notice allegedly sent by regular mail to the addresses of the affected property owners as shown on the tax rolls, however, was not received by Tiffany. The city ultimately assessed Tiffany's property $364,939, over 10 times the originally contemplated figure.

---

[13] I assume for the purpose of this opinion the city satisfied its legal duty to notify Tiffany by mailing to the wrong address.

No direct judicial appeal of the assessment was filed by Tiffany after the city confirmed the LID assessment in January 1999 and posted notice of original assessment by certified mail in February 1999.

¶31 The city's basis for its assessment against the Tiffany property is set forth in the Final Special Benefit Study for South 196th/200th Street Corridor Project LID number 340, prepared by the city's appraiser. Clerk's Papers (CP) at 76-84. The Tiffany property was one of only a few properties south of South 212th Street included within the local improvement district. The properties to the east, west, and south of the Tiffany property were not within the LID and therefore not assessed. The city's appraisal report states:

> Generally, properties to the south of S. 212th Street are without special benefits, except for properties constructed from 1986 with development conditions related to the project.

CP at 80.

¶32 The Tiffany property was apparently included within the LID, and assessed, not because it would receive any "special benefits," i.e., an increase in the fair market value of the property immediately after the public improvement, but rather because it had obtained a conditional use permit in 1986 to slightly expand its industrial use.

¶33 Because Tiffany did not contest the assessment administratively nor did it appeal the assessment within 10 days after the ordinance confirming the assessment role became effective as required by RCW 35.44.210, the majority claims the assessment is final (absent some jurisdictional defect, of which there is none), and the assessment cannot be collaterally attacked. End of story.

¶34 However this is where the real story begins, not where it ends.

¶35 In February 2000, Tiffany filed this lawsuit for state inverse condemnation and for relief under 42 U.S.C. § 1983 (§ 1983). Pursuant to § 1983 Tiffany argued the excessive assessment was a taking under the fifth amendment to the United States Constitution for which just compensation

was due and also deprived Tiffany of its property without that process due under the Fourteenth Amendment.

## I. Tiffany's State Inverse Condemnation Claim

¶36 While it is true a property owner wishing to change an assessment must follow the statutory procedure,[14] a takings claim under the state constitution is not a challenge to the assessment; rather it is premised upon the finality of the assessment. The claim is it takes private property without just compensation by assessing in excess of the special benefit.

¶37 However the majority does not even acknowledge a separate cause of action to secure our state constitutional right of just compensation for private property taken by the government for public use, constitution article I, section 16 ("No private property shall be taken or damaged for public or private use without just compensation having been first made . . . ."), notwithstanding our clear holding that an assessment in excess of special benefit is such a taking. *See, e.g., Heavens v. King County Rural Library Dist.*, 66 Wn.2d 558, 564, 404 P.2d 453 (1965) (" 'It is the basic principle and the very life of the doctrine of special assessments that there can be no special assessment to pay for a thing which has conferred no special benefit upon the property assessed. To assess property for a thing which did not benefit it would be *pro tanto* the taking of private property for a public use without compensation, hence unconstitutional.' " (quoting *In re Shilshole Ave.*, 85 Wash. 522, 537, 148 P. 781 (1915))); *Behrens v. Commercial Waterway Dist. No. 1*, 107 Wash. 155, 158, 181 P. 892 (1919) ("[I]t is fundamental that no greater charge can be made than a sum equal to the benefits received; for if a charge be made over and above the benefit to the property, it is a taking of property without just compensation and violates art. I, § 16 of the Bill of Rights."); *see also In re Consol. Appeals of Jones*, 52 Wn.2d

---

[14] The notice of appeal to the superior court must be filed within 10 days of the city council's confirming the assessment by ordinance. RCW 35.44.210.

143, 324 P.2d 259 (1958). Thus, a property owner alleging an excessive assessment states a takings claim under article I, section 16 of the state constitution and has an independent cause of action to be determined on its merit in a court of law.

¶38 But the majority denies constitutionally required just compensation by essentially arguing the procedures to change an assessment through appeal within 10 days thereof preclude an independent action under the state constitution for just compensation. Further, the majority interprets and applies RCW 35.44.190 to foreclose even the possibility of a state constitutional takings or due process claim. Majority at 238-39. Asserting that an unchallenged assessment is "conclusive," the majority claims the special benefit must therefore equal the amount of the assessment. Period. Thus, in the eyes of the majority there can never be a takings claim predicated on an unchallenged assessment. The majority's creative interpretation of the statute (which speaks only of proceedings, not of the result[15] ) also, in the majority's view, trumps the state constitution, which clearly forbids takings without just compensation. The majority therefore holds a statute can bar an action for a constitutional deprivation, precisely the opposite of the correct hierarchy.

> If then, the courts are to regard the constitution, and the constitution is superior to any ordinary act of the legislature, the constitution, and not such ordinary act, must govern the case to which they both apply.
>
> Those, then, who controvert the principle, that the constitution is to be considered, in court, as a paramount law, are reduced to the necessity of maintaining that courts must close their eyes on the constitution, and see only the law. This

---

[15] The statute reads in relevant part:

Whenever any assessment roll for local improvements has been confirmed by the council, the regularity, validity, and correctness of the *proceedings* relating to the improvement and to the assessment therefor, including the action of the council upon the assessment roll and the confirmation thereof shall be conclusive in all things upon all parties.

RCW 35.44.190 (emphasis added).

doctrine would subvert the very foundation of all written constitutions. It would declare that an act, which, according to the principles and theory of our government, is entirely void, is yet, in practice, completely obligatory. It would declare, that if the legislature shall do what is expressly forbidden, such act, notwithstanding the express prohibition, is in reality effectual. It would be giving to the legislature a practical and real omnipotence, with the same breath which professes to restrict their powers within narrow limits. It is prescribing limits, and declaring that those limits may be passed at pleasure. That it thus reduces to nothing, what we have deemed the greatest improvement on political institutions, a written constitution, would, of itself, be sufficient, in America, where written constitutions have been viewed with so much reverence, for rejecting the construction.

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176-77, 2 L. Ed. 60 (1803) (Marshall, C.J.). The mere passage of time does not bar an action seeking just compensation for a taking under constitution article I, section 16. *Valley View Indus. Park v. City of Redmond*, 107 Wn.2d 621, 631, 733 P.2d 182 (1987) ("It is well settled in Washington that where a taking occurs by eminent domain or by inverse condemnation, a landowner's right to seek just compensation may not be barred merely by the passage of time."). In *Valley View*, the developer did not challenge a rezone of its property within the 30 day period prescribed by ordinance, but the case proceeded based on the above stated rule. *Id.*[16] Nor is a direct judicial appeal the exclusive remedy.

¶39 The majority asserts, "In the same cases in which we have held that special assessments made in excess of special benefits constitute a taking, we have just as clearly stated that such challenges must be made pursuant to statutory procedure unless a jurisdictional defect exists," and, "In over 100 years of precedent, we have clearly held that the statutory procedure for challenging special assessments is the exclusive means for attacking assessments as

---

[16] We have since noted, without deciding, a 3, 6, or 10 year period may apply to regulatory takings. *See Orion Corp. v. State*, 109 Wn.2d 621, 634-35, 747 P.2d 1062 (1987). Under any of these standards, Tiffany's claim is timely.

excessive or otherwise incorrect." Majority at 236-37. However, the majority confuses an action to change an assessment with an independent action asserting taking without just compensation. None of the authorities cited by the majority support its claim, and some contradict it.

¶40 The majority cites *Heavens*; *Hargreaves v. Mukilteo Water Dist.*, 43 Wn.2d 326, 261 P.2d 122 (1953); and *Alexander v. City of Tacoma*, 35 Wash. 366, 77 P. 686 (1904).

¶41 In *Heavens* the property owner sought to change an assessment for a library as an improper purpose for a local improvement district. 66 Wn.2d at 562. The taking of private property without just compensation was not at issue. Moreover, the owner successfully challenged the assessment by declaratory judgment, never appealing under former RCW 56.20.080, *repealed by* Laws of 1996, ch. 230, § 1702.

¶42 In *Hargreaves* the property owner sought to change a deficiency assessment, which the court invalidated because the water district had not assessed all of the property within the district. 43 Wn.2d at 330. In dictum, the court reiterated the general rule that an assessment cannot exceed special benefit without resulting in a taking. *Id.* at 331-32. However, a takings claim was not made in *Hargreaves* and the court certainly did not say that a takings claim is barred unless the statutory procedure to change the assessment is followed.

¶43 *Alexander* merely stands for the oft-quoted rule that an action to change an assessment must follow the statutorily prescribed processes. 35 Wash. at 375. That case does not discuss the nature of an independent takings claim.

¶44 The majority misrepresents these cases to support its novel assertion that a takings claim is lost if statutory procedures to directly appeal the assessment are not utilized. Moreover, by extension, the majority would also necessarily hold a takings claim is equally lost if a property owner *did* undertake a timely appeal. By logical extension of the majority's view there can never be an action in this

state for just compensation for an excessive assessment because if a statutory appeal of the assessment is the exclusive vehicle, such an appeal can never result in any money judgment against the government. Therefore, according to the majority, one can never sue the government for just compensation pursuant to article I, section 16 when the assessment exceeds the special benefit. The majority simply repeals the takings article by judicial fiat!

¶45 Unfortunately, the majority fails to recognize that an action to change an assessment and a claim for just compensation are very different. Tiffany's suit is *not* an attempt to change the assessment nor is it a collateral attack on the assessment per se. This suit independently claims the government took Tiffany's property without just compensation because it assessed the property in excess of the special benefit. This is hardly a novel view.

¶46 LID assessments inversely condemn property to the extent they exceed any special benefit to the property assessed. *Bellevue Plaza, Inc. v. City of Bellevue*, 121 Wn.2d 397, 404, 851 P.2d 662 (1993). This standard requires the assessor to compare the value of the property *immediately* before the improvements with its value immediately after the improvements. *Id.*; *Heavens*, 66 Wn.2d at 564; *In re Appeal of Schmitz*, 44 Wn.2d 429, 268 P.2d 436 (1954). The theory is that the property owner loses nothing if he is assessed less then the value added by the public improvement. The difference in value, if any, is the amount of the special benefit. Here, however, according to the city's own appraisal report the LID improvements added no value to Tiffany's property in this sense. The assessor valued the Tiffany property based on the difference between the value before the *permit* was granted to its value 12 years later after the LID was formed. CP at 192 (the improvements were "a prerequisite for development of the properties to their highest and best uses"). This is not a "special benefit" which can avoid an inverse condemnation. *Bellevue Plaza*, 121 Wn.2d at 404. This final assessment took Tiffany's property, entitling Tiffany to compensation under the state

constitution. CONST. art. I, § 16; *see Behrens*, 107 Wash. at 158.

## II. Tiffany's Claims Under 42 U.S.C. § 1983

¶47 Without citation to authority, the majority refuses to consider Tiffany's § 1983 claims asserting they are not adequately stated in *Tiffany*'s motion for summary judgment. Majority at 239-40.

¶48 Apparently the majority is referring to the common law rule codified in RAP 9.12,[17] which allows an appellate court to consider only the issues and evidence "called to the attention" of the trial court. However, anything referred to in the trial court's order has been called to its attention and hence is proper for appellate review. *See Millikan v. Bd. of Dirs. of Everett Sch. Dist. No. 2*, 92 Wn.2d 213, 215, 595 P.2d 533 (1979) (appellate court may consider all documents upon which the trial court relied); RAP 9.12. " 'The purpose of this limitation is to effectuate the rule that the appellate court engages in the same inquiry as the trial court.' " *Mithoug v. Apollo Radio of Spokane*, 128 Wn.2d 460, 462, 909 P.2d 291 (1996) (quoting *Wash. Fed'n of State Employees v. Office of Fin. Mgmt.*, 121 Wn.2d 152, 157, 849 P.2d 1201 (1993)).

¶49 Moreover, it was the *city*'s motion to dismiss and for summary judgment which was granted and that motion sought to dismiss the entire complaint, including the § 1983 claims, CP at 105, because Tiffany *did* make a claim under § 1983 in the complaint, CP at 12, and in its briefing before the trial court, CP at 311 n.1. All of this was considered by the trial court when making its ruling. CP at 334-35.

---

[17] RAP 9.12 provides the following:

On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court. The order granting or denying the motion for summary judgment shall designate the documents and other evidence called to the attention of the trial court before the order on summary judgment was entered. Documents or other evidence called to the attention of the trial court but not designated in the order shall be made a part of the record by supplemental order of the trial court or by stipulation of counsel.

¶50 The trial court obviously considered the issue before it since it definitely ruled: "There were no federal or state constitutional violations in the Local Improvement District No. 340 proceedings that would give rise to a claim, *including a claim under 42 U.S.C. § 1983.*" CP at 335 (emphasis added). Since the trial court dismissed the entire complaint, it of necessity ruled on § 1983. This order of the trial court is before us, and hence any claims under § 1983 are as well. As the trial court dismissed all § 1983 claims we, engaging in the same inquiry as the trial court, must review the propriety of that judgment.

¶51 42 U.S.C. § 1983 was originally enacted as part of the Civil Rights Act of 1871 to implement the Fourteenth Amendment, originating in the Ku Klux Klan Act of the same year. 14 C.J.S. *Civil Rights* § 5, at 492 (1991); *see also District of Columbia v. Carter*, 409 U.S. 418, 425-29, 93 S. Ct. 602, 34 L. Ed. 2d 613 (1973). Its main purpose was to provide any person the ability to defend his constitutional rights against abusive state action. 14 C.J.S. *Civil Rights* § 6, at 493-94. All persons regardless of skin color are equal before the law, and state governments could not abridge the federal rights of any person without facing the possibility of suit under § 1983 to vindicate those rights. *Id.* Thus, the heart of § 1983 is a *federal* cause of action to protect against *state* deprivations. This purpose must be kept in mind when applying the statute to the present situation. State law cannot be a defense to a § 1983 claim because it is wrongful action under color of state law which is the very basis of the claim.

## A. TAKINGS

¶52 Federal law allows a person to vindicate his constitutional rights by suing, pursuant to 42 U.S.C. § 1983,[18] a state actor who has burdened federal rights. *Sintra, Inc. v.*

___

[18] This statute reads as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within

*City of Seattle*, 119 Wn.2d 1, 11, 829 P.2d 765 (1992). When a plaintiff alleges a regulatory taking of his property because land use restrictions deprive him of his property's use in violation of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, his claim must be "ripe" to be considered. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 187, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985). This is not a requirement that a plaintiff need exhaust administrative review procedures before pursuing a § 1983 claim. *See Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982).

¶53 In the federal takings context ripeness has two elements: a final agency decision and exhaustion of state mechanisms to obtain just compensation. *Williamson*, 473 U.S. at 187-97. The former applies only to regulatory takings, i.e., use restrictions, *Daniel v. County of Santa Barbara*, 288 F.3d 375, 382 (9th Cir. 2002) and hence is inapplicable here. The remaining ripeness question is whether Tiffany sought and exhausted state compensation procedures. If dismissal of its inverse condemnation claim is affirmed, it has. By filing this lawsuit and seeking relief under the Washington Constitution through an inverse condemnation proceeding, an adjudication of the inverse condemnation claim will exhaust state procedures to obtain just compensation. *Allingham v. City of Seattle*, 109 Wn.2d 947, 954, 749 P.2d 160, 757 P.2d 533 (1988) ("Had the plaintiffs sought compensation for the taking of their property even as an alternative remedy in the present action, they would have exhausted the procedures available under

the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

Washington law for obtaining just compensation."), *overruled on other grounds by Presbytery of Seattle v. King County*, 114 Wn.2d 320, 787 P.2d 907 (1990); *see also Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 734 n.8, 117 S. Ct. 1659, 137 L. Ed. 2d 980 (1997) ("Ordinarily, a plaintiff must seek compensation through *state inverse condemnation proceedings* before initiating a takings suit in federal court . . . ." (emphasis added)).

¶54 A state inverse condemnation claim is the proper way to seek compensation, and that is the course Tiffany here pursues. If we deny monetary compensation for Tiffany's state inverse condemnation claim, its § 1983 takings claim is ripe and must be considered. And, since the assessment exceeds special benefit, the takings claim has merit.

## B. SUBSTANTIVE DUE PROCESS

¶55 Tiffany also claims the assessment violates substantive due process. To determine whether a regulation deprives one of his property absent that substantive process which is due,[19] we must ask:

"(1) whether the regulation is aimed at achieving a legitimate public purpose; (2) whether it uses means that are reasonably necessary to achieve that purpose; and (3) whether it is unduly oppressive on the landowner."

*Sintra*, 119 Wn.2d at 21 (quoting *Presbytery*, 114 Wn.2d at 330 and citing *Lawton v. Steele*, 152 U.S. 133, 14 S. Ct. 499, 38 L. Ed. 385 (1894)); *see also Goldblatt v. Town of Hempstead*, 369 U.S. 590, 594-95, 82 S. Ct. 987, 8 L. Ed. 2d 130 (1962) (applying due process analysis); *Asarco, Inc. v. Dep't of Ecology*, 145 Wn.2d 750, 762, 43 P.3d 471 (2002) (same); *Christianson v. Snohomish Health Dist.*, 133 Wn.2d 647, 661, 946 P.2d 768 (1997) (same); *Guimont v. Clarke*, 121 Wn.2d 586, 609, 854 P.2d 1 (1993) (same); *Robinson v.*

---

[19] We should note that a due process violation may also occur through arbitrary or irrational executive action, although that is not the claim here. *See Mission Springs, Inc. v. City of Spokane*, 134 Wn.2d 947, 970, 954 P.2d 250 (1998).

*City of Seattle*, 119 Wn.2d 34, 55, 830 P.2d 318 (1992) (same); *Orion Corp. v. State*, 109 Wn.2d 621, 646-47, 747 P.2d 1062 (1987) (same); *W. Main Assocs. v. City of Bellevue*, 106 Wn.2d 47, 52, 720 P.2d 782 (1986) (same); *Cougar Bus. Owners Ass'n v. State*, 97 Wn.2d 466, 477, 647 P.2d 481 (1982); *City of Seattle v. Ford*, 144 Wash. 107, 111, 257 P. 243 (1927).

¶56 Here Tiffany claims the $364,939 assessment was "unduly oppressive." This involves consideration of (a) the nature of the harm to be avoided, (b) the economic loss suffered by the property owners, and (c) the availability and effectiveness of less drastic measures. *Sintra*, 119 Wn.2d at 22; *Presbytery*, 114 Wn.2d at 331. In *Sintra* we concluded a $219,000 fee to develop a $670,000 piece of property was unduly oppressive. *Sintra*, 119 Wn.2d at 22-24. In *Guimont* we concluded although an unconstitutional taking had not transpired, the mobile home relocation assistance act, chapter 59.21 RCW, which required a park owner to contribute money toward a tenant's relocation costs constituted a deprivation of the owner's property without due process because the scheme was unduly oppressive. 121 Wn.2d at 608-13. And we have firmly held, exactly on point, an assessment in excess of special benefit deprives the owner of his property without due process. *Heavens*, 66 Wn.2d at 564.

¶57 Here a similar result must follow since the owner is assessed $364,939 for street improvements which render him virtually no "special benefit," i.e., the value of his property was not enhanced by the public improvements.

¶58 Once again this is not a collateral attack on the assessment, but rather the legal consequence of the assessment. The assessment stands, but it is this assessment which deprives Tiffany of its property absent substantive due process.

### III. Conclusion

¶59 The final LID assessment on Tiffany's property in the amount of $364,939 works both an uncompensated

taking of property and a deprivation of property, violating recognized substantive due process criteria. A final assessment in excess of special benefit does not bar a claim for just compensation; it mandates it under article I, section 16 of the state constitution. Moreover, 42 U.S.C. § 1983 provides a federal remedy for an uncompensated taking as well as a due process violation.

¶60 I dissent.