
# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

JOSEPH TAFOYA AND BRANDELYN
TAFOYA,

            Respondents,

    v.

SHARON HUNTER,

             Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

No. 76798-4-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: September 17, 2018

ANDRUS, J. — Sharon Hunter appeals a judgment and writ of restitution declaring an unlawful detainer under RCW 59.12 and terminating her occupancy of respondents' premises. The court awarded respondents rent, court costs, and attorney fees but reserved a monetary judgment pending personal service of a summons and complaint. We affirm.

## FACTS

This appeal involves a family dispute over real property in Redmond, Washington. In May 2005, Kenneth Simon – a friend of Sharon Hunter's father, Ronald Hunter – purchased the Redmond property on Ronald's behalf. According to Sharon, the purchase was part of an oral agreement between Ronald, herself, and her daughter, respondent Brandelyn Tafoya. Under the alleged oral agreement, Ronald, Sharon and Brandelyn would be business partners in several businesses run by Sharon and Brandelyn on the property, including horse riding, training, and boarding. Ronald agreed to make the

mortgage payments until the businesses became successful enough for Brandelyn and Sharon to make them.

On December 1, 2005, Simon executed an "Option to Purchase" the Redmond property, giving Ronald and Brandelyn until November 1, 2006 to exercise the option. They never exercised the option.

Sharon resided on the property for the next 12 years and took care of her parents, who lived in a trailer on the property. She alleges her caretaking responsibilities prevented her from running a business on the property as planned, but she nevertheless made valuable improvements to the property.

Brandelyn and her boyfriend, Joseph Tafoya, did not live on the property until 2015 but boarded their horses there.

In December 2007, Simon passed title of the Redmond property to Brandelyn and Joseph via a statutory warranty deed. In 2008, Brandelyn and Joseph married (hereafter "Tafoyas"). The Tafoyas claim they allowed Ronald and his wife to live on the property as tenants "pursuant to an oral lease," and allowed Sharon to reside there "as a caretaker."

In 2015, the Tafoyas moved onto the property. In January 2017, they notified Sharon by letter that she needed to vacate the premises or they would commence proceedings to evict her.

In March 2017, Sharon filed for bankruptcy. One month later, the bankruptcy court granted the Tafoyas relief from the automatic stay in order to pursue their "remedy to gain possession of the premises in state court."

On March 8, 2017, the Tafoyas filed this action against Sharon for forcible detainer and unlawful detainer under RCW 59.12. The complaint alleged that Sharon "was formerly a guest of the premises and is now an unauthorized occupant." It further alleged the Tafoyas owned the property and sought, among other things, termination of Sharon's tenancy, a writ of restitution, and a judgment for unlawful detainer and damages, including rent, late charges, unpaid utility and maintenance billings, and any consequential damages. Sharon did not file an answer to the complaint, and the court set a show cause hearing.

Prior to the hearing, Sharon and her son, Jeffrey Hunter, filed a declaration alleging, in part, that Ronald Hunter, Sharon, and Brandelyn had an oral agreement "to act as unofficial partners in purchasing the property and running the businesses" on the property. "Brandelyn would offer riding classes and horse training" and Sharon "would offer horse boarding and care, and office meetings with team-building events for businesses, as well as a venue for private dining and events." Ronald would make the mortgage payments until the businesses "were bringing in sufficient revenues to make the mortgage payments." Sharon alleged that in exchange for "my full-time care of my mother, and my occasional help with any of [Ronald Hunter's] needs, he would make the mortgage payments on the subject property for me until I could take them over in my own name."

Sharon did not sign her declaration. Instead, her counsel signed it on her behalf and interlineated the words "per email agreement 4/26/17." Jeffrey signed a signature page containing some language from his declaration, but the page did not match the signature page in the original declaration.

At the show cause hearing, the court ruled that the declaration was not in proper form and was inadmissible under GR 13 and RCW 9A.72.085. The Tafoyas presented the court with a copy of their statutory warranty deed and a copy of what counsel described as an "Order Granting Relief From Automatic Stay" filed in their bankruptcy proceeding. The copy of the bankruptcy order presented by counsel stated in part that the Tafoyas "are the legal owner" of the property and Sharon as the Debtor "has no ownership interest in the Premises." The record indicates, however, that the bankruptcy order provided to the trial court was a copy of a *proposed* order, not the order actually issued by the bankruptcy court. The actual order signed by the bankruptcy judge had the proposed language concerning Sharon's lack of an ownership interest crossed out.

Sharon did not appear at the unlawful detainer show cause hearing. The trial court granted the writ of restitution, concluding that Sharon had presented no admissible evidence to establish any ownership interest in the property. In its oral ruling, the court stated in part:

> You know . . . the documentation that your client submitted saying well . . . I did all this work and that was supposed to be paid out of escrow. If it was or wasn't, that was 12 years ago. That's neither here nor there. And that certainly doesn't give her an ownership interest in the property. That gives her no interest in the property. They might have given her a lien if she knew what she was doing, but she didn't. And if there was a breach of contract, that breach – I mean even a six-year statute of limitations, that expired in 2011. So she's got – she just does not today have a single leg to stand on.

In its written findings, the court found Sharon "took possession of the described premises as a guest of the Plaintiffs" and "is guilty of forcible and unlawful detainer pursuant to RCW 59.12.020 and RCW 59.12.030." The court also found her "liable to Plaintiff for fair market rent, court costs, and attorney's fees" but reserved judgment on those awards pending service of a summons and complaint.

The court's judgment stated in part that "[t]here is no substantial issue of material fact concerning the right of Plaintiff to be granted relief as prayed for in the complaint for unlawful detainer and as provided for by statute." Sharon appeals.

## ANALYSIS

Sharon first contends the trial court erred in giving res judicata effect to what she describes as a "false bankruptcy order." We agree that the Tafoyas' attorney misrepresented to the trial court that the bankruptcy court had found Sharon had no ownership interest in the property. The language counsel quoted to the trial court had actually been stricken by the bankruptcy judge who signed the order. However, the trial court did not rely on this alleged finding when it granted the writ of restitution, nor did it mention the bankruptcy order in its written findings and conclusions. The court's oral ruling made it clear that the decision was based on a lack of evidence, rather than on any findings made by the bankruptcy court:

> And . . . I'm not quite sure why the Orders of the bankruptcy court aren't exactly res judicata on this issue anyhow. But it doesn't matter. I'm – based on the record in front of me, I'm going to sign the findings . . . .

The trial court gave no res judicata effect to the bankruptcy order.

At a subsequent May 5, 2017 bond hearing, Sharon's counsel notified the court, both orally and in writing, that the bankruptcy order previously considered by the court was not the actual signed version of that order, but was instead only the proposed order. She also reported to the court that the bankruptcy court had made no finding regarding Sharon's ownership interest. The trial court was thus apprised of the issue and took no steps to modify its findings of fact—further supporting the conclusion that the court did

not give any res judicata effect to the purported factual findings made by the bankruptcy court.

Sharon next contends the court violated RCW 59.12 by evicting her without holding a trial. RCW 59.12.130 requires a trial by jury "whenever an issue of fact is presented by the pleadings." Sharon contends the quoted language requires a trial if a complaint and answer suggest there is an issue of fact. But she did not raise this argument or request a trial below. We need not consider claims raised for the first time on appeal. See RAP 2.5(a).

But even assuming an "issue of fact" could be created by pleadings alone and without any admissible evidence,[1] Sharon failed to make such a showing for several reasons. First, she never filed an answer to the complaint. For the first time on appeal, and without citing authority, she now argues that her unsigned "declaration was, in substance, an answer to the complaint," that the trial court should have treated it as such, and that her declaration/answer was sufficient to require a trial under RCW 59.12.130. Again, we need not consider claims that are either not preserved or unsupported by authority.

---

[1] Sharon cites 4105 1st Ave. S. Invs., LLC v. Green Depot WA Pac. Coast, LLC, 179 Wn. App. 777, 780-81, 786, 321 P.3d 254 (2014) for her contention that RCW 59.12.130 – which requires a trial "whenever an issue of fact is presented by the pleadings"—requires a trial if an issue of fact appears from the complaint and answer. But the meaning of the statute was not at issue in that case. In our view, Sharon's interpretation of RCW 59.12.130 gives insufficient consideration to the words "issue of fact." When used in the context of determining whether issues warranting a trial exist, the words "issue of fact" normally require a party to establish a fact issue with evidence, not mere allegations. CR 56 (c), (e). If trials could be obtained by mere allegations in an answer, show cause hearings would be meaningless. Cf. Leda v. Whisnand, 150 Wn. App. 69, 84, 207 P.3d 468 (2009) (in a case involving the Residential Landlord Tenant Act, RCW 59.18, this court stated "[i]f no evidence may be presented at an unlawful detainer show cause hearing beyond that which exists in the written pleadings, the exclusive purpose of the show cause hearing – the presentation of evidence – ceases to exist. This would render RCW 59.18.380 virtually meaningless—nothing more than a requirement that superior courts hold perfunctory and purposeless hearings on matters to be decided solely on the pleadings."). Significantly, the plaintiffs in this case provided the court with evidence of ownership, i.e. a statutory warranty deed. Sharon failed to produce any admissible evidence rebutting that claim or demonstrating a viable claim of co-ownership.

Second, contrary to Sharon's assertions, her declaration did not demonstrate an issue of material fact. She claims the declaration supported a defense "that she is the true owner of the property under the doctrine of part performance." Specifically, she maintains the parties had an oral agreement and their "performance over the following ten years was consistent with that oral agreement and inconsistent with [respondents'] new theory that they are the sole, exclusive owners." But when Sharon raised her ownership theories below, the court stated that any contract claim was barred by the statute of limitations.[2] Sharon offered nothing to dispute that point below. Now, for the first time on appeal, she argues that her part performance defense below was essentially a quiet title claim, and that such claims are not subject to a statute of limitation.[3] We need not consider this new claim. See RAP 2.5(a).

Last, Sharon contends the court erred in evicting her when she "presented evidence supporting her right of possession." As noted above, the trial court ruled her declaration was inadmissible, and Sharon did not testify at the hearing. There was no admissible *evidence* of an oral agreement before the court.

Respondents request attorney's fees on appeal, arguing that Sharon's appeal is frivolous. RAP 18.9(a); Tiffany Family Trust Corp. v. City of Kent, 155 Wn.2d 225, 241, 119 P.3d 325 (2005). Because the appeal presents no debatable issues upon which reasonable minds might differ, we award respondents fees on appeal subject to their compliance with RAP 18.1.

---

[2] The court stated "if there was a breach of contract, that breach – I mean even [under] a six year Statute of Limitations, that expired in 2011."

[3] There is no statute of limitations on an action to quiet title. See Petersen v. Schafer, 42 Wn. App. 281, 284, 709 P.2d 813 (1985). We note, however, that any agreement not in writing, and thus oral agreements, are subject to a 3-year statute of limitations. RCW 4.16.080(3).

Respondents also request damages for the rental value of the premises. Although they also requested such damages below, the superior court reserved that issue, stating that it is "for later adjudication and is not part of this judgment." In response to questions from this court concerning the appealability of the judgment and order for writ of restitution, respondents acknowledged that the court reserved a judgment for damages, but maintained the unlawful detainer action was final and represented that they "may bring a separate action against Ms. Hunter seeking a money judgment for the use of their property or the action may be converted to an ordinary civil suit." Accordingly, we leave the issue of damages for the superior court to address in any further litigation.

Affirmed.

WE CONCUR:

Andrus, J.

Appelwick, J.

Dwyer, J.