**FILED**
**JULY 7, 2015**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SETH BURRILL PRODUCTIONS, INC., | ) | |
| a Washington corporation, | ) | No. 32119-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| REBEL CREEK TACKLE, INC., | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — This is an appeal from a finding of contempt for violation of an order resolving a previous dispute between the parties. Concluding that this appeal is completely without merit, we affirm the contempt finding and award costs and attorney's fees for the appeal.

FACTS

Allen Osborn invented and patented a fishing lure, and formed Rebel Creek Tackle, Inc. (RCT) to handle the ensuing business. In order to begin manufacture of the lures, RCT had prototypes and steel injection molds produced in China. RCT then licensed Seth Burrill Productions, Inc. (SBP) to be the exclusive producer and distributor of the lures, granting it "full, unrestricted use of the injection molds." The molds were

then transferred to Richland based manufacturer, Plastic Injection Molds, Inc. (PIM) for production.

Following a breakdown in relations with SBP, RCT unilaterally terminated the license in 2012, and began its own distribution of lures obtained from PIM. In response, SBP brought an action for breach of contract. In May 2013, an arbitrator found that RCT had breached the licensing agreement, and entered an award providing for damages and the reinstatement of a modified licensing agreement. The arbitration award was then confirmed in a court order filed June 7, 2013. Pertinently, the arbitration award and court order amended the provision in the licensing agreement granting SBP use of the injection molds to additionally require that RCT "cooperate in the transfer and/or delivery of said molds as requested by [SBP]."

Immediately thereafter, SBP contacted PIM to arrange the transfer of the molds. However, because the molds are the property of RCT, PIM would not release the molds without permission. SBP attempted to contact RCT, but was unable. SBP eventually contacted RCT's attorney, who refused to agree to the transfer, instructed PIM not to release the molds, and then informed SBP that he no longer represented RCT. SBP then made several additional, unsuccessful attempts to directly contact RCT before bringing the present action for contempt, four months after the court order was filed. The trial court found that RCT had intentionally violated the court order and imposed remedial sanctions. RCT appealed.

2

ANALYSIS

RCT challenges the contempt finding, arguing that the licensing agreement, as modified by the court order, was ambiguous and that its violation of the order was justified in order to protect its property interests. We will address those arguments and then consider SBP's request for attorney's fees.

*Contempt*

A party is subject to contempt where there is intentional disobedience of a valid court order. RCW 7.21.010. A finding of contempt is within the discretion of the trial court and will not be reversed absent an abuse of that discretion. *Schuster v. Schuster*, 90 Wn.2d 626, 630, 585 P.2d 130 (1978). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

RCT argues that the modification to the licensing agreement imposed by the arbitration award and court order is ambiguous because the word "transfer" can mean alternatively a change in possession or a sale. *See* BLACK'S LAW DICTIONARY 1727 (10th ed. 2014). However, a term in a contract is not rendered ambiguous merely because one word is susceptible to multiple meanings. *Grant County Constructors v. E.V. Lane Corp.*, 77 Wn.2d 110, 121, 459 P.2d 947 (1969). Rather, the word must be read in the context of the contract as a whole, and where the language used is

3

unambiguous, an ambiguity will not be read into the contract. *Hering v. St. Paul-Mercury Indem. Co.*, 50 Wn.2d 321, 323, 311 P.2d 673 (1957).

The clause requiring RCT to "cooperate in the transfer and/or delivery of the molds," unambiguously contemplates only a change in possession in order to facilitate SBP's use of the molds for the duration of the contract.[1] "Transfer" could not reasonably mean "sale" in this context since that word already is used in the same phrase as an alternative possibility to "transfer." Furthermore, the parties agree on this meaning of the word "transfer" in this context. Consequently, the modified licensing agreement was unambiguous.

RCT next contends that its actions were justified as a means to protect its property interests in the molds. It contends that SBP intends to perpetrate fraud by misreporting sales and that SBP could lose or damage the molds while in its possession. However, RCT has presented no evidence that any of these hypothetical future harms will occur[2]

---

[1] RCT argues that resolving the ambiguity entails adding conditions to SBP's possession of the molds. These conditions were not included in the original agreement nor in the court order, and a court order cannot be collaterally attacked in contempt proceedings. *State v. Coe*, 101 Wn.2d 364, 369-70, 679 P.2d 353 (1984). Additionally, even if this were a reasonable interpretation, RCT would still have been in contempt of court for refusing to cooperate with the transfer.

[2] The contention that SBP intended to defraud RCT stems from the fact that SBP previously failed to submit the quarterly sales reports required by the licensing agreement. However, the arbitrator determined that this failure was inconsequential because SBP had instead reported all sales as they occurred.

nor is there any legal support that this constitutes a defense to contempt. RCT also has the ability to enforce any breach of the agreement by SBP by bringing its own action.

RCT has failed to demonstrate that the trial court's finding of contempt was in any manner untenable. Therefore, we affirm.

*Attorney's Fees*

SBP requests that this court award costs and attorney's fees as sanctions under RAP 18.9(a) for bringing a frivolous appeal.[3] An appeal is frivolous when it presents no debatable issues upon which reasonable minds might differ, and it is so devoid of merit that there is no possibility of reversal. *Tiffany Family Trust Corp. v. City of Kent*, 155 Wn.2d 225, 241, 119 P.3d 325 (2005). Doubts as to whether an appeal is frivolous should be resolved in favor of the appellant. *Id.* Raising at least one debatable issue precludes a finding of frivolousness. *Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 170 Wn.2d 577, 580, 245 P.3d 764 (2010).

Here, RCT has appealed from a finding of contempt, while conceding all of the essential facts establishing that it intentionally violated a court order. It contends instead that its actions were acceptable because the court order is ambiguous. Yet under any interpretation, it would still have been in violation of the order. It also contends that its actions were justified without any factual or legal support. Thus, RCT has not presented

---

[3] Because RCT is not the prevailing party, we need not address its claim for attorney's fees on appeal.

No. 32119-3-III
*Burrill v. Rebel Creek*

any debatable issue and this appeal is completely without merit. SBP is awarded its costs

and attorney's fees for this appeal upon compliance with RAP 18.1(d).

Affirmed

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Korsmo, J.

WE CONCUR:

Brown, A.C.J.

Lawrence-Berrey, J.

6